CHARLES WALKER *v.* DANIEL P. KING, JOHN B. DURKEE, OLIVER S. CURTIS, JOHN K. FLINT, DAVID G. BOSWORTH, ELISHA FLINT, AND RICHARD WILLS.

[ IN CHANCERY.]

*Foreclosure. Subsequent Mortgage. Assignment. Rents and Profits. Equity of Redemption.*

Where, in a foreclosure case, the petition, which was confessed, made a different case from the facts reported by a master to whom it had been referred. either party might have moved to amend the pleadings so as to make them conform to the report, but if neither party moves to amend, but they go to trial on the report, all objections on the ground of variance are waived.

Where a party is so related to a mortgage that he is not personally liable upon it, but is obliged to pay it to save his estate, and he does pay it, the payment will be presumed to be made for that purpose, and in such case no assignment of the mortgage to the person paying it, nor proof of an intention on his part to keep it alive, is necessary to give him the benefit of it.

*McDaniels* v. *Flower Brook Manuf. Co.*, 22 Vt., 274, commented on and explained.

An equity of redemption is tantamount to a fee at law, and is descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute inheritance at law.

A subsequent mortgagee of the equity of redemption, who permits the grantee of the mortgagor to remain in possession, has no greater claims than he would have had if the mortgagor had remained in possession, and must stand upon his rights under his own mortgage.

A. gave a mortgage of premises to B., and a subsequent mortgage of the same premises to C., and B. foreclosed his mortgage without making C. a party; before the time of redemption expired, A. conveyed his equity of redemption to D., and D. paid the decree, *held* that D. stood on his rights as grantee of A., and only acquired the rights of B. to strengthen his other title and save his estate. *Also held* that C. is not entitled to a decree of foreclosure of his mortgage without redeeming the prior mortgage, and not having taken possession or done anything equivalent thereto, is not entitled to an accounting for rents and profits.

PETITION for the foreclosure of a mortgage. The petition set up that Cyrus Safford, now deceased, of Royalton, in the county of Windsor, on the first day of January, A. D. 1857, duly executed to the petitioner a mortgage deed of certain land, situate in Royalton, as therein described, with a condition as therein set forth, and that Daniel P. King, John B. Durkee, David G. Bosworth, Jonas Flint, and Oliver S. Curtis, all of said Royalton, are in possession of separate and distinct portions of said lands, claiming some right, title and interest in and to the same by virtue of conveyances directly or indirectly from one Elisha Flint, who claimed to hold title to the same by virtue of a foreclosure and decree in chancery, as hereinafter stated; that prior to the execution of said mortgage by said Cyrus Safford to him, said Safford mortgaged said premises to the treasurer of the State of Vermont, or to the South Royalton Bank, which was duly assigned to the State treasurer, and that a suit was commenced on said mortgage in the name of the State treasurer as orator, against said Cyrus Safford's administrator and others, and a decree passed thereon at the May term of the court of chancery for Windsor county, A. D. 1859, fixing the sum due in equity on the same at five thousand three hundred and sixty-three dollars and four cents, ($5,363.04,) and the costs at seventy-six dollars and seventy cents, which sum it was decreed should be paid by instal-

ments, in two, six, and twelve months thereafter, with interest thereon from June 27, 1859, and that the petitioner was not made a party to said suit for foreclosure, nor in any way foreclosed thereby; that after the making said decree, said Elisha Flint paid the same and took an assignment or some conveyance thereof, and took possession of said premises by virtue thereof, and has ever since, by himself and his grantees aforesaid, and also by one Richard Wills, of said Royalton, who at one time claimed to have and to hold some interest in and to said premises or a portion thereof by virtue of said decree and conveyance by said Flint, taken the whole rents and profits of said premises to himself.

And praying that he might be permitted to redeem said premises from said State treasurer mortgage and decree to Elisha Flint, and that there might be deducted therefrom the amount of the rents and profits of said premises since said Flint and his grantees and said Wills have had possession thereof, and that a master may be appointed for the proper ascertaining the amount of such rents and profits, and that the equity of redemption of the said Daniel P. King, John B. Durkee, Oliver S. Curtis, Jonas K. Flint, David G. Bosworth, Elisha Flint and Richard Wills in the premises may be foreclosed.

At the May term, 1870, no answer having been made to said petition, it was taken as confessed, and the subject matter thereof referred to a master.

At the May term, 1871, the master reported to said court of chancery, that the mortgage to the petitioner was given subsequent to mortgages on the same premises, as follows, viz: one to the South Royalton Bank, assigned to the treasurer of the State of Vermont; one to Edwin S. Wood, and one to Nancy Safford. That Cyrus Safford, deceased, and his administrator, sold the premises to Lorenzo Mosier and Benjamin Flint, or Elisha Flint, and gave a deed of conveyance thereof to Benjamin Flint and said Mosier, the consideration of which was that the purchasers should pay the said Bank mortgage, the said mortgage to Wood, and $800 to Nancy Safford on her mortgage, which payments were made pursuant to said agreement. There was a decree for foreclosure of

the bank mortgage, and as to the last payment thereon there was written on the decree the following, to wit:

June 20th, 1860. In consideration of $1,917, being the amount of the last instalment received by the hand of Elisha Flint, I hereby assign and sell to him the orator's interest in the within decree and all rights appertaining thereto.

H. CARPENTER, *Receiver of South Royalton Bank.*

That the sum due on the petitioner's notes and mortgage, on the 1st day of December, 1870, is five hundred and sixty dollars and thirty cents. Elisha Flint advanced one-half of the money to make said payments for said premises. He is Benjamin Flint's father. Under some arrangement between them, the said Benjamin went into possession of a portion of said premises and built a dwelling-house and out buildings thereon, of the value of one thousand dollars. He claimed that the payments by his father and the purchase were for his benefit. Elisha Flint claimed that they were for his. It was settled between them by Benjamin selling and conveying his interest in the premises to Elisha. The defendant, John B. Durkee, built a dwelling-house and out buildings on another portion of said premises. The defendant, Jonas K. Flint, erected a building on another portion of said premises. Since the said sale by said administrator, wood and timber to a considerable value has been taken from said premises. The sum of $400 would be a fair yearly rent for said premises, aside from said buildings, the lessee paying the taxes. The said Charles Walker was not a party to the suit to foreclose the said mortgage to the South Royalton Bank.

Upon the report of the master, the chancellor, BARRETT, entered a decree that inasmuch as said Bank mortgage, and decree named in said petition and report, are paid and satisfied so far as the petitioner is concerned, that the same in this cause shall be held and regarded as paid and satisfied, so far as the petitioner and his mortgage are concerned, but without prejudice to the rights of the said Elisha Flint to keep said mortgage and decree on foot and subsisting by virtue of the assignment to him, so far as other parties are concerned.

The chancellor further found that the sum due in equity on the petitioner's mortgage on the 1st day of June, 1871, is $577.11, and that the costs of this suit amount to $79.99, making in the whole the sum of $657.10, and decreed that unless the said Daniel P. King, John P. Durkee, Oliver S. Curtis, Jonas K. Flint, David G. Bosworth, Elisha Flint, and Richard Wills, pay to the clerk of this court, for the benefit of the petitioner, the said last mentioned sum, on or before the first Tuesday of June, A. D. 1872, with interest thereon from the 1st day of June, A. D. 1871, to the time of such payment, they, the said Daniel P. King, John P. Durkee, Oliver S. Curtis, Jonas K. Flint, David G. Bosworth, Elisha Flint and Richard Wills, and all persons claiming under them, or any or either of them, shall be foreclosed and forever barred from all equity of redemption in the premises.

The defendants, Elisha Flint and Richard Wills, appealed.

*S. E. & S. M. Pingree*, for Flint and Wills, defendants.

The finding of the chancellor is wholly unwarranted by the petition and record. The master had no duties to perform, except to ascertain the amount of rents and profits.

The finding and decree of the chancellor upon the master's report, so far as the bank mortgage is found and decreed paid and satisfied, are erroneous. The report shows that Elisha Flint paid, and duly took an assignment of the entire interest secured by the bank mortgage. It is immaterial when this assignment was made, so long as it was a subsisting lien at the time of making it. The supposition of Benjamin Flint that the purchase and payments of these mortgages and instalments, by the father, were all for his benefit, is contradicted by the father's claim that he paid them for his own benefit, as stated in the report; also by the fact found that Benjamin went into possession of only a portion of the premises, and that he did this " under some arrangement between them;" also by the fact that Elisha Flint took an assignment of the bank decree to himself, on making final payment; and lastly, inasmuch as it was obviously for Elisha's interest to keep the bank incumbrance on foot, as a subsisting lien, does it not tend to show, conclusively, that his acts and conduct throughout the transactions were suggested solely by his interests and intentions ?

There is nothing in the report tending to show that the father considered the farm, or any part of it, the estate of the son, without being subject to the charges which the father held, by virtue of having paid them and owning them himself.

The payment of the bank decree by Mr. Flint was no extinguishment of the same. If so, it might add to the agreed purchase price of the farm the entire amount of the orator's notes, thereby working an injury to Flint to that extent, and, in any event, it would enhance the orator's security, all probably to the detriment of the defendant. This, equity will not allow. *Bailey* v. *Willard*, 8 N. H., 429 ; *Towle* v. *Hoit*, 14 N. Hamp., 61 ; *Robinson et als.* v. *Leavitt*, 7 N. Hamp., 73, 99, 100, 101 ; *Poole* v. *Hathaway*, 22 Maine, 85 ; *Hatch* v. *Kimball*, 14 Maine, 9 ; *McDaniels* v. *Flower Brook Mf'g Co.*, 22 Vt., 274 ; *Paine* v. *Hathaway*, 3 Vt., 212 ; *Bullard* v. *Leach*, 27 Vt., 491.

When the owner of the inheritance becomes the owner of the incumbrance upon it, no merger of the latter is thereby created, if otherwise intended by him, or if his interest requires that it should remain as a subsisting charge. *Lockwood* v. *Sturtevant*, 1 Conn., 2 Series, 373, 378 ; *Myers* v. *Brownell*, 1 D. Chip., 488 ; 34 N. Hamp., 96 ; 45 N. Hamp., 348 ; *Slocum* v. *Catlin*, 22 Vt., 137–8 ; *Downer* v. *Fox et als.*, 20 Vt., 388 ; *Hatch* v. *Kimball*, 16 Maine, 146 ; *Simonton* v. *Gray*, 34 Maine, 50 ; *Marshall* v. *Wood et als.*, 5 Vt., 250, 254 ; *Millspaugh* v. *McBride*, 7 Paige, 509 ; *Russell* v. *Austin*, 1 Paige, 192 ; *Davis* v. *Burritt*, 11 Eng. L. and E. Rep., 317, 322 ; 5 U. S. Dig., 388 ; 8 U. S. Dig., 270 ; 13 U. S. Dig., 479 ; 3 Pickering, 481 ; 5 Pickering, 150 ; *Mechanics' Bank* v. *Edwards*, 1 Barb., 271 ; *Bullard* v. *Leach*, 27 Vt., 491.

The orator has no superior equities here. He is just where he started in relation to this bank mortgage. The relation created between Flint and Safford's estate was that of a surety toward a principal, and when Flint, the surety, paid the incumbrances, he could keep them on foot and treat them as subsisting liens, as against the orator's mortgage, if he elected to do so. *McDaniels* v. *Flower Brook Mf'g Co. et als.*, 22 Vt., 286. And on such pay-

ment the defendant could claim to be subrogated to the rights of the bank. Ib; also 3 Vt., 212.

But, says the orator, Flint's payment of the bank mortgage was voluntary. If it was made as a gift to any party, and from a disinterested motive, there being no rights in law or equity to be protected by such payment, this proposition may be true. But can the court presume in this case such intention, want of interest, and absence of imperiled rights? *Payne* v. *Hathaway*, 3 Vt., 219–220.

Unless Flint had paid the bank mortgage, equity would have interposed to compel him to reconvey, and until he paid it he was, in law, only a mortgagor to Safford's estate. *Slocum* v. *Catlin et als.*, 22 Vt., 137–8; *Downer* v. *Fox et als.*, 20 Vt., 388–394.

*W. C. French*, for the orator.

The whole *consideration* of the purchase was the agreement to pay the mortgages, and Flint and Mosier thereby became legally liable to pay them. They stood in the same relation as Safford or his administrator, and when the mortgages were paid the debts were thereby *extinguished*. Flint, being under obligation to pay the bank mortgage, could not have it assigned to himself and keep it on foot as to the petitioner. *McDaniels* v. *Flower Brook Mf'g Co.*, 22 Vt., 274, 287; *Hyde* v. *Flint et al.*, Orange Co. Sup. Ct., March T. 1869, (not reported.) Flint and Mosier understood fully about the petitioners' mortgage when they purchased. It was duly recorded when given, and notice to them is presumed.

The rule in relation to keeping mortgages on foot is well stated by Chancellor KENT: "A court of equity will keep an encumbrance alive, or consider it extinguished, as will best serve the purposes of justice and the actual and just intention of the party." *Starr* v. *Ellis*, 6 John. ch., 395. The question whether a payment is a *purchase* or *extinguishment* must always depend "on the rights and duties of the parties." But in order to make a "payment equivalent to a purchase, two things must concur; first a right to purchase and keep alive, and next an intention to exercise the right and buy the debt instead of extinguishing it." 2 Leading Cases in Equity, 230. These principles have been rec-

ognized in this State. *Myers* v. *Brownell*, 1 D. Chip., 448; *Mc-Daniels* v. *Flower Brook Co.*, 22 Vt., 274; *Bullard* v. *Leach*, 27 Vt., 491; vide also *Robinson et al.* v. *Leavitt*, 7 N. H., 100; *Given* v. *Marr*, 27 Maine, 212; *Loomis* v. *Wheelwright*, 3 Sanf. ch., 157.

In this case there existed in Flint no " right to purchase and keep alive," as he was paying his own debt, and no " intention" to do so unless as to the *last instalment* on the bank mortgage decree.

, In *Myers* v. *Brownell*, and *Bullard* v. *Leach*, above cited, the parties were allowed to keep a prior mortgage on foot, *when that was the intention,* as against a subsequent attachment and levy which the mortgagor had agreed to pay.

This is not a case involving a right of *subrogation*, as that of a subsequent mortgagee paying a prior mortgage.

If any right exists to keep the incumbrance on foot, it can only be as to the last instalment on the bank mortgage decree, of $1,917, paid by Flint, June 20th, 1860. The other instalments on this mortgage were paid, *without any assignment of them or intention to keep them on foot and subsisting.* This sum has been much more than repaid by the rents and profits of the premises, at $400 per year, as reported by the special master. The master does not give the date of the deed to Mosier and Flint, and their taking possession, but the petition alleges that it was on the 7*th day of October,* 1858, being long prior to the payment of June 20, 1860. The petition is taken as *confessed,* and of course the facts stated therein admitted.


The opinion of the court was delivered by

WHEELER, J. Upon the case made by the petition and confession, the petitioner stood as a second mortgagee, seeking to redeem the first mortgage and to foreclose his own, and the defendants stood as assignees of the first mortgage in possession, taking the rents and profits. Upon that case, the defendants should have accounted for the rents and profits, and permitted the petitioner to redeem their mortgage. But with the parties all before the court, the cause was referred to a master, and a hearing had be-

fore him, and upon his report additional facts appeared. The case made by that report is a very different one from that made by the petition and confession. Upon the coming in of the report, either party could have moved the court for leave to amend the pleadings, so as to make them conform to the report. Neither party moved in that direction, and both proceeded to hearing upon the case made by the report without objection. If either had objected, probably the other would have moved for an amendment. Both, by proceeding, waived all such objections, and the cause was heard upon the case made by the report, and upon the appeal has come here to be heard in the same way.

Upon the facts stated in the report, the mortgage to the petitioner was a fourth mortgage, and was in effect only a mortgage of the equity of redemption of the three prior mortgages. Cyrus Safford, the mortgagor, at the time of his decease, was personally holden for the payment of all the mortgages without reference to their priority. The mortgage premises were holden for the payment of the mortages in the order as to time in which the mortgages were made. The estate of Cyrus Safford, in the hands of the administrator, stood holden to the payment of all the mortages the same as he in his lifetime had been, and the mortgage premises were holden to the payment of the mortgages according to priority, after his decease the same as before. When the administrator sold to Flint and Mosier, they acquired the equity of redemption of all the mortgages, but they did not become personally holden to the mortgagees to pay any of them. As between them and the estate of Safford, they were bound to pay the two first mortgages and eight hundred dollars of the third. This payment would relieve the estate from so much of its liabilities, and appears to have been the consideration for the conveyance of the equity of redemption. While they held the equity of redemption they could be compelled to pay off the mortgages to save their estate. As they were under no personal obligation to the mortagees to pay the mortages at all, if they failed to do so, the mortagees could claim nothing of them beyond their estate. As they paid the mortgages, the payment must be presumed to have been made to save their estate, for that was the only purpose beneficial

77

to them that they could accomplish by it.    This was a common case of payment of a mortgage by a holder of an estate necessary to be made to save the estate.    In such cases no assignment of the mortgage to the person paying it, nor proof of an intention on his part to keep it alive, is necessary to give him the benefit of it. His payment of it, together with its relation to his estate, bring it in aid of his title to strengthen and uphold it.    There are many reported cases of payment of a mortgage upon an estate, by a holder of the estate, where the person paying was held not to be entitled to stand upon the mortgage paid to help his title as against all parties, several of the most important of which have been cited for the petitioner.    The position of John M. Clark in *McDaniels* v. *Flower Brook Mf'g Co.*, 22 Vt., 274, was such that he could not so stand against the defendant corporation, because being surety for the corporation, and having, upon a consideration received by him separate from the mortgage premises, made a valid agreement with it to pay the debt, he made the payment, because he was bound to make it in discharge of that agreement, and not on account of the liability of the corporation charged upon the mortgage premises to save his estate in them.    That decision does not purport to hold that he could not stand upon that mortgage against other parties, but only that he could not against the corporation.    In *Starr* v. *Ellis*, 6 Johns. ch., 393, a person who had paid off a mortgage, and thereby had become the owner of the whole estate, was held not to be entitled to keep it on foot, so that it would be a valid incumbrance in the hands of his assignee against a bona fide purchaser of the estate from him.    In *Robinson* v. *Leavitt*, 3 N. H., 73, the persons who paid and took the mortgage afterward gave a bond to a judge of probate to pay all the debts due from an estate, of which the mortgage debt was one, and that bond was by the laws of New Hampshire in force, for the benefit of persons interested in the estate of which the mortgage premises were a part, and the persons paying the mortgage undertook to keep it on foot against the persons interested in the estate for whose benefit the bond was taken and held.    Under these circumstances it was held that the mortgage could not be set up against those persons.    In *Given* v. *Mann*, 27 Maine, 212, the

mortgage was undertaken to be set up against the right, of the wife of a grantee of the person paying it off, to dower in the mortgage premises, and it was held that the mortgage could not be set up against her. *Loomer* v. *Wainwright*, 3 Sandf., 135, stands upon the peculiar facts of the case, and is not contrary to the general rule. The other reported cases cited in behalf of the petitioner are, all of them, cases where the general rule was applied. In all these cases particularly mentioned, it was clearly recognized as a general rule, but was not applied in behalf of the persons claiming the benefit of it in those particular cases, because, from the peculiar circumstances in each case, to have applied the rule in behalf of those persons would have been clearly inequitable as to others against whom the benefit of it was claimed. This general rule seems to have been applied in all cases where the person against whom the mortgage is undertaken to be kept on foot, and set up, would be placed in no worse situation than he would have been in if the mortgage had been left outstanding, and the setting it up would not operate as a fraud, by the party setting it up, upon the party against whom it was set up.

In this case the petitioner will be in no worse condition if the defendants stand upon the mortgages they have paid off, than he would have been in if the defendants had not paid them, and the original mortgagees had still held them. He has had the same right to redeem them in the hands of Flint and Mosier, and of the defendants, at any time since they were paid off, that he had while they were in the hands of the original mortgagees before they were paid off, and that he would have had if they had continued in the hands of the original mortgagees all the while. The payment of the amount of them would redeem them in either place. He took and had a mortgage only of the estate as it was subject to them, and was always obliged to pay them off or give up that security, and it wrought no hardship nor injustice to him to change the persons of whom he could redeem. The defendants, therefore, who stand upon the rights of Flint and Mosier, who paid off the mortgages, have a right to stand upon the mortgages to support their title, and the petitioner is not entitled to a decree of foreclosure upon his mortgage, without redeeming these prior

mortgages in the hands of such defendants. The estate of Cyrus Safford held the equity of redemption of all the mortgages. "The equity of redemption is considered to be the real and beneficial estate, tantamount to the fee at law; and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute inheritance at law." 4 Kent Com., 159. Flint and Mosier acquired this equity of redemption of the estate of Safford, and took possession under the rights they so acquired, and their possession and rights have passed to the defendants. The defendants and those in whose right they stand, therefore, are and have been in possession as mortgagors. When they have paid off mortgages, they have not taken possession under the mortgages they paid off, but have continued the same possession that they had before, under the same title they had before, not changed, but strengthened merely by the mortgages they have paid off and taken. They have never been mortgagees in possession, and they stand upon the rights of those who were mortgagees only to uphold their other title. The petitioner does not appear to have ever taken any possession under his mortgage, or to have done anything equivalent. The mortgagor, and those standing in his right, have therefore never been accountable for rents and profits to the petitioner as the case now appears. 1 Wash. Real Prop., 549; *Hooper* v. *Wilson*, 12 Vt., 695. The petitioner seems to have permitted the defendants as assignees of the mortgagor to remain in possession, and has no greater claim to rents and profits of them than he would have had of the mortgagor if he had continued in possession. Instead of redeeming the mortgages prior to his, or undertaking to take possession under his own against the mortgagor, or those standing upon the rights of the mortgagor, he has chosen to lie by and permit them as mortgagors to enjoy the estate, and has now no rights except to stand upon his own mortgage, for what it was at first, and always has been, a mortgage of the equity of redemption of the three prior mortgages.

The decree of the court of chancery is reversed and the cause remanded to that court to be proceeded with there according to these views.