LEMUEL COBB, in equity, *vs.* CATHARINE F. DYER & another.

Cumberland.   Opinion May 26, 1879.

*Equity.   Cancellation of mortgage.   Subrogation.   Mistake.*

Equity may annul the cancellation of the record of a mortgage, against a
grantee whose deed is made " subject to the mortgage," when the cancellation
was made in ignorance of the existence of such deed.

And this, too, even though the deed was duly recorded, if the junior mort-
gagee, who paid and caused the senior mortgage to be cancelled, was not guilty
of culpable negligence in the premises.

When such subsequent mortgagee, ignorant of a prior deed, and *bona fide* rely-
ing upon his mortgage, pays the sum due on the senior mortgage for his own
benefit, and allows it to be discharged and its registration cancelled, the can-
cellation and discharge may be annulled, and he subrogated to the rights of
the senior mortgagee.

BILL IN EQUITY, heard on bill, answer and proof, whereby the
complainant seeks to establish, as an existing charge upon the
land mortgaged, two mortgages given by the defendant Wallace,
one to the city of. Portland and the other to the complainant.

When Mr. Dyer was about to convey the land in controversy
to Wallace, Mrs. Dyer declined to execute the deed, and thereby
relinquish her right of dower therein, unless Wallace would agree
to reconvey the premises to her after he had raised money on the
premises by mortgaging the same to the city of Portland.
Wallace finally consented, and thereupon Mrs. Dyer signed the
deed with her husband, and relinquished her right of dower.

Wallace testified, in substance, that he did not know the con-
tents of his deed to Mrs. Dyer, but supposed it conveyed the land
and not the house.   But Mrs. Dyer, her daughter and Mr. Stack-
pole testified that the deed was read to Wallace and fully
explained to him before he signed it.

The remaining material facts appear sufficiently in the opinion.

*S. C. Strout & H. W. Gage*, claimed that both mortgages should be made a charge upon the land.

On upholding the city mortgage they cited *Twitchell* v. *Mean*, The Reporter, July 10, 1878, 40. Jones Mort., §§ 736, 751. *Sweetsir* v. *Jones*, 35 Vt. 317. *Cox* v. *Hoxie*, 115 Mass. 120. 2 H. & W. Lead. Cas in Eq. 242.

On estoppel to deny the mortgage in amount. *Freeman* v. *Auld*, 44 N. Y., 50. Jones Mort., §§ 874—876, 877. *Ellsworth* v. *Lockwood*, 42 N. Y. 89–97. *Russell* v. *Pistor*, 7 N. Y. 171. *Barus* v. *Mott*, 64 N. Y. 294. *Cox* v. *Hoxie*, *supra*. *Bailey*, v. *Myrick*, 50 Maine, 171. 2 H. & W. Lead. Cas. in Eq. 230, 231.

On construction by registry. *Champlin* v. *Leighton*, 18 Wend. 421. Jones Mort. §§ 971–969. *Bruce* v. *Nelson*, 35 Iowa, 157. *Banta* v. *Garnio*, 1 Sandf. c. 383. *Bruce* v. *Barney*, 12 Gray, 107. *Smith* v. *Smith*, 15 N. H. 55. *Lambert* v. *Leland*, 2 Sweeney (N. Y.), 218.

Counsel contended that deed to Mrs. Dyer was a voluntary conveyance and actually fraudulent.

*A. A. Strout & G. F. Holmes*, for the defendant, Mrs. Dyer, submitted an elaborate brief, contending, among other things, that no accident placed the plaintiff in his present position. There were here no " such unproven events, misfortunes, losses, acts, or omissions, as are not the result of any negligence or misconduct in the party." 1 Story's Eq., § 78.

It was the deliberate act of the complainant, acting in his own interest, disregarding the dictates of common prudence, shutting his eyes to what the law says he shall see.

In law, and in equity, too, a party dealing in real estate is informed of all conveyances duly executed and recorded. *Scamman* v. *Cole*, 3 Cliff. 472. *Davis* v. *Rodgers*, 64 Maine, 159. 1 Story's Eq., § 105. *Sedam* v. *Williams*, 4 McLean, 51. *Hunt* v. *Hunt*, 2 Wash. 127.

Common prudence directed him to search the record. *Dick* v. *Balch*, 8 Pet. (U. S.), 30, 38, 39.

Ignorance is not mistake. *Perry* v. *Martin*, 4 Johns. c. 566.

VIRGIN, J. On September 28, 1867, one J. W. Dyer, husband of the female defendant, agreed in writing with the defendant Wallace—who had been brought up in the Dyer family—to convey to him a certain vacant lot of land described therein, " as soon as said Wallace shall erect thereon a tenement for his own use." Thereupon Wallace took possession of the lot, and having some $600 in money belonging to himself and wife, commenced the building of a " story and a half frame house " upon it. Having finished the house as originally intended—with a few rooms left unfinished—Dyer, pursuant to his agreement, by his deed of warranty, dated November 7, 1867, but acknowledged November 18, and duly recorded, conveyed the lot to Wallace.

On November 19, 1867, Wallace conveyed the premises in mortgage to the city of Portland, to secure his note of the same date for the sum of $300, money hired and applied to the construction of the house; which mortgage was duly recorded November 30, 1867.

On November 18, 1867, Wallace, by his deed of warranty bearing this date and acknowledged the same day, but not recorded until the sixth of the following January, " in consideration of one dollar," conveyed the same premises to Catherine F. Dyer, the female defendant, " subject to " the mortgage to the city.

In January, 1868, the house was completed, and Wallace occupied it until the death of his wife, in June, 1872, when he rented it, and received the rents and made repairs until the fall of 1877, when Mrs. Dyer took possession to collect the rents.

On January 24, 1868, Wallace, having previously hired $300 of the plaintiff—$275 of which were paid in October and November before to the builders—conveyed the premises in mortgage, with the usual covenants of warranty, to the plaintiff, to secure the payment of the money hired.

On January 23, 1871, the plaintiff, at the request of Wallace, as the plaintiff testifies, and having no knowledge of the deed to Mrs. Dyer, paid to the city $326.99—the amount due on the city mortgage—and, instead of taking an assignment thereof, received the note thereby secured with the sum paid by him indorsed

thereon by the city treasurer, but allowed the mortgage to be discharged on the record.

On the next day Wallace mortgaged the same premises, with like covenants, to the plaintiff, to secure the sum of $373.16, which included the sum paid on the city mortgage.

The plaintiff prays, among other things, that, in view of his mistake in relation to the existence of Wallace's deed to Mrs. Dyer, the city mortgage be decreed as subsisting for his benefit, and that the sum paid on that mortgage, and interest thereon, be decreed a subsisting charge upon the real estate in question.

Mistake is one of the fundamental grounds of equity jurisdiction. "No one is more appropriate. Human sagacity is inadequate to the attainment of a perfect knowledge and comprehension of every combination of circumstances under which it may become necessary to act, and especially when the influence of the acts and wiles of the designing and knavish are superadded." Shepley, C. J., in *Robinson* v. *Sampson*, 23 Maine, 388.

Ordinarily the mistake from which relief will be given must be one of fact and not of law. *Freeman* v. *Curtis*, 51 Maine, 140. *Jordan* v. *Stevens*, 51 Maine, 78. And it must not be imputable to the plaintiff's culpable negligence. *Western R. R.* v. *Babcock*, 6 Met. 352. 1 Story's Eq., § 146. And it must appear that his conduct was determined by the mistake ; but this need not be established by direct evidence when the facts can be fairly implied from the nature of the transaction. 1 Story's Eq., § 162. *Bruce* v. *Nelson*, 35 Iowa, 157.

The cases are numerous wherein courts of equity have corrected the cancellation and discharge of mortgages on the record, when done by mistake, and protected parties from the consequences thereof, especially when such relief would not result prejudicially to third persons. *Kinnear* v. *Lowell*, 34 Maine, 303. *Bruce* v. *Bonney*, 12 Gray, 107.

In *Robinson* v. *Sampson, supra,* this court as then constituted assented to the proposition, and adopted the language of the learned chancellor of New Jersey (in *Trenton Banking Co.* v. *Woodruff*, 2 N. J. Eq. 1 Green, 117), " that the cancellation of a mortgage on the record is only *prima facie* evidence of its dis-

charge, and leaves it open to the party making such objection to prove that it was made by accident, mistake or fraud. On such proof being made, the mortgage will be established, even against subsequent mortgagees, without notice," who became such anterior to the cancellation. Illustrating the first part of the same proposition, the court in New Jersey subsequently held that, where a mortgagee who was an aged man and ignorant of business, under a mistaken impression that the mortgage was satisfied, consented to its cancellation, it should be upheld—the case not falling within the principle of culpable negligence, against which equity does not relieve. *Banta* v. *Vreeland,* 15 N. J. Eq. 107.

So in *Bruce* v. *Nelson,* 35 Iowa, 157, a senior mortgagee, in ignorance of a junior mortgage, released his mortgage, consented to its discharge on the record, and took a new one to secure the original notes and a small additional sum loaned ; and the court restored the lien of the first mortgage.

It is a familiar principle that a junior incumbrancer has a right to redeem a prior incumbrance ; and when he does so, he thereby acquires the right to the security held by the other. 1 Jones Mort., § 874, and cases there cited. Moreover, his title need not necessarily be a legal one. On the contrary, if the junior mortgage is received for money loaned and put into the property mortgaged under the full belief that the mortgagor had the title, and the transaction was *bona fide* in all respects and without negligence on the part of the second mortgagee, and under that state of facts he purchases the prior mortgage to sustain and protect his supposed title, he has such a colorable title as will in equity authorize the mortgage thus purchased to be kept on foot, when such a result will not prove prejudicial to subsequent parties.

This view is substantially entertained by the court in Indiana. In *Muir* v. *Berkshire,* 52 Ind. 149, Biddle, C. J., says : " Subrogation generally takes place between co-creditors, where the junior pays the debt due to the senior to secure his own claim. . . It is not allowed to volunteer purchasers or strangers, unless there is some peculiar equitable relation in the transaction, and never to mere meddlers. But, while this is true generally, we think that a

person who has paid a debt under a colorable obligation to do so, that he may protect his own claim, should be subrogated to the rights of the creditor." See the cases cited in that opinion.

Applying these principles to the facts in the case at bar, the city mortgage must be upheld, unless the constructive knowledge contained in the registry of deeds prevents. For the deed to Mrs. Dyer being expressly made " subject to the mortgage," the land thereby became charged with the mortgage debt (1 Jones Mort., § 736, and cases); and by sustaining this mortgage she is deprived of nothing to which she is justly entitled. The plaintiff, relying upon the validity of his own mortgage, had a colorable right to and did pay the city mortgage debt, for his own benefit and not for hers; and, as she loses nothing by the transaction, she has no equitable right to be benefited by its payment. *Lambert* v. *Leland*, 2 Sweeny (N. Y.), 218. He did it in ignorance of the very material fact of the intervening deed to Mrs. Dyer, taken after the record of city mortgage and expressly subject to it. Who can doubt that, if the plaintiff had known of the existence of that deed, he would not have consented to the discharge of that mortgage and taken a subsequent one. *Bruce* v. *Nelson, supra*.

But it is said he had constructive knowledge thereof through the registry of deeds, and cannot obtain the relief sought. To be sure, he might have learned the fact of the existence of the deed had he exercised the prudence of a man of business dealing with a stranger in relation to land the title of which he knew nothing. But a searching of the record is not indispensable. *Grimes* v. *Kimball*, 3 Allen, 518, 522. And he was dealing with his cousin—both old men. He knew of the deed from Dyer to Wallace, and of the mortgage from Wallace to the city; saw Wallace in possession, building a house to live in. Instead of being put on inquiry, every fact within his knowledge served to inspire the belief that Wallace had the title, and he never suspected that so material a fact as the existence of the deed would be suppressed. We do not think his ignorance of that fact, under the circumstances, was the result of negligence.

In Iowa, where the holder of a first mortgage, in ignorance of

the existence of a subsequent recorded one on the premises, released his mortgage and took a new one, the court held that the party was entitled to have the mortgage restored and given its original priority. In answer to the point of constructive knowledge afforded by the registry, Day, J., said : " This position proves too much. In order that a debt may attach as a lien prior to a mortgage, it must always, in some way, appear of record ; so that, in every case in which the claim is in a condition to be asserted in preference to the mortgage, the mortgagee has the means of ascertaining its existence. The argument then would amount to this : that a mortgage released in mistake could never be restored against a prior claim which was in a condition to become a lien. In other words, that the lien of a mortgage could never be restored except when the restoration is unnecessary and unimportant."

In relation to the mortgage of January 24, 1868, from Wallace to the plaintiff, taken after the record of the deed to Mrs. Dyer, whatever may be our opinion of the moral right or of what is just and equal, we know of no rule in equity by which the premises in question can be charged with that debt.

Our conclusion, therefore, is that the discharge on the record be declared void ; that the premises be charged with the sum paid on said mortgage, with interest thereon until paid; and that, if the same, with the costs of this suit, be not paid within sixty days from final decree in this suit, that the premises be sold according to the provisions in said mortgage.

*Decree accordingly.*

APPLETON, C. J., WALTON, BARROWS and LIBBEY, JJ., concurred.