### ELIZA G. SIMPSON

*v.*

### THOMAS GARDINER.

*Filed at Ottawa February 3, 1881.*

1.  SUBROGATION—*of party paying joint mortgage to save his own land held in common with another.*   Where two persons purchased a tract of land, receiving a deed therefor, not in severalty, but to them in common, gave their joint notes for the unpaid purchase money, secured by their joint mortgage on the entire tract, and one of them died, so that the other was compelled to pay the whole amount of the notes and interest to save his own share in the land, it was *held,* that the party so paying off the incumbrance was entitled to contribution, and to be subrogated to the rights of the mortgagee, and to enforce the lien of the mortgage as to the money paid above his own proper share.

2. INTEREST—*to tenant in common discharging an incumbrance.* Where one of two tenants in common is obliged to pay off an incumbrance upon the entire estate to save his own interest therein, and the debt so paid by him is drawing ten per cent interest, on bill for contribution and to be subrogated to the rights of the holder of the incumbrance, he will be entitled to recover the same rate of interest.

APPEAL from the Appellate Court for the Second District; the Hon. N. J. PILLSBURY, presiding Justice, and the Hon. JOSEPH SIBLEY and Hon. EDWIN S. LELAND, Justices;—heard in that court on appeal from the Circuit Court of La Salle county; the Hon. J. McROBERTS, Judge, presiding.

Mr. D. P. JONES, and Mr. L. W. BREWER, for the appellant:

A court of chancery will not reform a written instrument except upon clear and satisfactory proof of a mistake. *Hunter, Admr.* v. *Bilyea et al.* 30 Ill. 228; *Shay* v. *Pettes et al.* 35 id. 360; *Cleary* v. *Babcock,* 41 id. 271; *Kuchenbeiser et al.* v. *Beckert et al.* 41 id. 172; *Mills et al.* v. *Lockwood,* 42 id. 111; *Miner* v. *Hess,* 47 id. 170; *Emery* v. *Mohler,* 69 id. 221; *Sutherland et al.* v. *Sutherland et al.* id. 481; *Moore* v. *Munn et al.* id. 591; *Palmer* v. *Converse,* id. 313; *Wilson* v. *Byers et al.* 77 id. 76; Kerr on Fraud and Mistake, 422; 1 Story's Eq. Jur. sec. 152, *et seq.;* Fry on Specific Perf. of Cont. sec. 505.

Even though the bill of complaint was sufficient and supported by testimony that would warrant the reformation as to Geo. W. Simpson, if living, there remains the question as to whether the court has not erred in rendering the decree against appellant, barring her dower and homestead right, she having been a *feme covert* at the time the mortgage was executed. We think no such authority as was exercised exists in a court of chancery. *Moulton et ux.* v. *Hurd,* 20 Ill. 137; *Martin et al.* v. *Hargardine,* 46 id. 322; *Hutchings et al.* v. *Huggins,* 59 id. 29; *The Board of Trustees, etc.* v. *Davison, et al.* 65 id. 124.

A vendor, by taking other security for the payment of the purchase money, waives his right to a vendor's lien. *Conover* v. *Warren et al.* 1 Gilm. 498; *Phelps* v. *Conover*, 25 Ill. 309; *Doolittle et al.* v. *Jenkins et al.* 55 id. 400; *Boynton* v. *Champlin*, 42 id. 57; *Kirkham et al.* v. *Boston*, 67 id. 599; *Berger et al.* v. *Potter et al.* 32 id. 66; *Warner* v. *Scott et al.* 63 id. 368; *Moshier, Admr.* v. *Meek et al.* 80 id. 79.

There is another reason why the lien can not now be enforced, if the right to enforce it ever existed, viz: lapse of time. The evidence shows that the money was paid Ferguson on December 13, 1869. The bill in this case was not filed until December 29, 1876. More than seven years had elapsed before any effort was made whatever to collect the money claimed to be due. Appellee, all that time, relying upon his mortgage as security, must be held to have waived his lien, if he ever had one. *Conover* v. *Warren*, 1 Gilm. 498; *Trustees, etc.* v. *Wright*, 11 Ill. 603; *Trustees, etc.* v. *Wright*, 12 id. 432.

Mr. G. S. ELDRIDGE, and Messrs. LELAND & GILBERT, for the appellee:

Upon the payment of a debt by a surety, he is entitled not only to the benefit of the collateral security, but also to the benefit of the debt, as represented by a bond or note. Jones on Mortgages, sec. 882; *Ellsworth* v. *Lockwood*, 42 N. Y. 89.

So, where a junior incumbrancer pays off a prior incumbrance, his right to be subrogated to the position of the prior mortgagee is not destroyed by reason of his taking from the mortgagor a new mortgage for the amount of both mortgages; and although the new mortgage be void on account of usury, by paying the prior mortgage he becomes entitled to a cession of the debt and a subrogation to *all* the rights of the mortgagee, and the mortgage, as against the mortgagor, is to be regarded as still existing. Jones on Mortgages, sec. 885; *Harper* v. *Ely*, 70 Ill. 581.

Had Mrs. Ferguson kept the original mortgage, and allowed Gardiner to pay his share only, Simpson would have been bound to pay ten per cent interest, and it is difficult to see why the obligation should not remain the same when Gardiner has become the owner of the indebtedness. Certainly the law should not put a premium upon neglect of duty by placing Simpson in a better position by reason of his failure to meet his obligations.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The material facts of this case are, that Gardiner, and G. W. Simpson, now deceased, bought a tract of land, say 80 acres, at the price of $2800. They each paid $500 in cash. The land was conveyed to them, and they gave notes and a mortgage upon the land for $1800, to be paid in installments. Appellant, then the wife of G. W. Simpson, joined in the mortgage. After the notes for this balance of the purchase money all fell due, Gardiner paid them off, and the mortgage was released. Simpson, to secure Gardiner the repayment of the money thus paid out by Gardiner, gave Gardiner three promissory notes, each for $300, and he and his wife, the appellant, attempted to secure the same by a mortgage upon the interest of Simpson in the whole tract, and executed what they all supposed was such a mortgage. By a blunder of the scrivener who drew the mortgage, it was made to embrace only one-half of the south half of the tract. Simpson lived on the part of the south half of the tract, embracing some 12 acres. The rest of the land was occupied by a tenant, who paid rent to Gardiner, or to Gardiner and Simpson each a part. Simpson died, and the money for which these three notes, each for $300, were given remains unpaid.

This is a bill by Gardiner against the widow and heirs of Simpson for partition, and asking that the half of the land to be set off to them shall be charged with the $900 of purchase money and the interest, which Gardiner paid in excess of what was his share to pay. The circuit court granted the

relief sought. On appeal the decree was affirmed by the Appellate Court, and the widow, Mrs. Eliza G. Simpson, appeals to this court.

There can be no question that when Gardiner paid the entire purchase money, he was, independent of any contract or the notes and mortgage given to him by Simpson and wife, subrogated to all of the rights of Mrs. Ferguson, their vendor. In equity, Gardiner, when he paid his own and Simpson's share to the vendor, became an assignee of Simpson's liability, as fully as had Mrs. Ferguson transferred the notes to him by indorsement. He was compelled to pay Simpson's share to protect his own interest in the land, as the notes and mortgage given to secure the purchase money were joint. Gardiner, therefore, did not occupy the position of an intermeddler or mere stranger to the transaction in voluntarily paying the money. He not only had the right, but was compelled by the law, to do so, or lose his own. Having paid all, as he did, Gardiner has a right to contribution from Simpson, or at least a lien on the land, to have his money refunded.

The question, however, arises as to what rate of interest Gardiner shall be allowed on the money he paid for Simpson's half,—whether six or ten per cent per annum. We are of opinion that it should be at the latter rate. The notes which they gave to Mrs. Ferguson on the purchase have six per cent before, and ten per cent after, maturity. Gardiner paid the notes after they became due, and they were then drawing this latter rate.

In the case of *Harper* v. *Ely*, 70 Ill. 581, we said, in reference to a second mortgagee who was obliged to redeem from a senior mortgage, which drew ten per cent interest per annum: "The fact that Ely paid off or purchased this debt, which was a prior lien on the land, could work no hardship on the complainant. It was a subsisting debt and a lien upon the mortgaged premises, and had to be paid, and

whether complainants are required to pay it to Ely or the original holder, can not in anywise prejudice their rights. * * * But it is said, ten per cent interest ought not to be allowed Ely on this claim, after it came into his hands. The claim drew ten per cent in the hands of the original holder, and when Ely bought or paid it, in equity he was subrogated to the rights of the original holder of the claim, and when the original creditor, by the terms of the contract, was entitled to ten per cent interest, we fail to see upon what principle Ely would not be entitled to the same."

There, a junior mortgagee was obliged to redeem to preserve his interest from a first and superior lien. Here, a joint promisor and mortgagor was compelled to pay for his co-mortgagor his half of the debt to the mortgagee to preserve his interests under the purchase. There, as here, the debt was drawing ten per cent interest. There, the junior mortgagee was subrogated to the place of the senior mortgagee, and was allowed to collect the money he paid, with ten per cent interest, and here, Gardiner should be subrogated to the place of the mortgagee, and be allowed to recover the amount of money he paid for Simpson, his co-mortgagor, with ten per cent interest per annum. Whilst the two cases differ in their facts, they are the same in principle, on this question. That case governs this.

Again, that this is equitable and just is shown by Simpson's agreement to pay interest at the rate of ten per cent to Gardiner, on the sum advanced to pay the liability of Simpson for his half of the land. By the allowance of that rate of interest we but carry out the expressed intention of the parties when Simpson gave to Gardiner his notes and mortgage for his half of the purchase money. But, aside from that agreement, it is but equitable and just that Gardiner should occupy the position of Mrs. Ferguson, as he is virtually her assignee.

We are, therefore, of opinion that the decree of the court below must be affirmed.          *Decree affirmed.*