FIRST NATIONAL BANK OF WESTPORT *v.* MOORE ET AL.

[No. 12,782. Filed November 15, 1928.]

*George L. Tremain* and *Rollin A. Turner,* for appellant.
*John E. Osborn,* for appellees.

ENLOE, P. J.—The essential facts necessary to an understanding of the question involved in this appeal are as follows:

The appellee Estella Moore in December, 1921, was the owner of certain lands in Decatur county, Indiana, and on December 23 of that year, she obtained a loan of $1,500 from the Greensburg National Bank, executed a note therefor, and secured the payment of said note by giving a mortgage on her said real estate.

The appellee Estella Moore and her husband, Samuel

Moore, were indebted to the Farmers Trust Company of Indianapolis, as evidenced by their promissory note, in the sum of about $12,000, which indebtedness was secured by a mortgage on certain real estate owned by Samuel Moore. They were also indebted to the appellant herein in the sum of about $4,000 evidenced by their promissory note, and secured by a mortgage on certain real estate owned by Samuel Moore, which last mortgage was junior and inferior to the mortgage of the Farmers Trust Company. These last two items of indebtedness being due, suits were brought to foreclose said mortgages, with the result that, December 5, 1922, a decree was entered by the Decatur Circuit Court, ordering the lands covered by said two mortgages sold and the proceeds applied: First, to the payment of costs; second, to the payment of the indebtedness to the Farmers Trust Company in the sum of $12,539.35; third, to the payment of the indebtedness due appellants in the sum of $4,054.10. There was also a deficiency judgment against the appellee Moore for any amount remaining unpaid upon the sale of said lands. Upon the sale of said lands by the sheriff, under said decree, there was a deficiency, and appellant received nothing upon its said judgment.

The indebtedness to the Greensburg National Bank being due and said bank demanding its money, Estella Moore applied to appellee Aetna Life Insurance Company for a loan of $2,000 with which to take up, pay off and discharge said indebtedness to the Greensburg National Bank. Said loan was made, a note evidencing the same and a mortgage covering the same lands covered by the said mortgage to the Greensburg National Bank were duly executed, and, out of the proceeds of said loan, the said indebtedness to the Greensburg National Bank in the sum of $1,783.05 was paid, and said mortgage to said bank was thereupon released. At the time of making said loan, the appellee had no actual

knowledge of the existence of said deficiency judgment against said Moore, and the same was not shown upon the abstract of title furnished to appellee insurance company, for its examination, prior to its making said loan. The appellant asserts that, upon these facts, the lien of its judgment is superior to the lien of the appellee Aetna Life Insurance company, and said company asserts that, under the facts, it is entitled to be subrogated to the rights and lien of the said Greensburg National Bank, and that it is entitled to have its mortgage established as the prior lien, and the said indebtedness being due, it is entitled to have said mortgage foreclosed as the prior lien.

The appellant, by its complaint, sought to have its judgment established as the prior lien on said lands and the Aetna Life Insurance Company, by its cross-complaint, sought to be subrogated to the rights of said bank, and the foreclosure of its mortgage as the prior lien.

The trial court held that said appellee was entitled to be subrogated and entered its decree accordingly, from which this appeal is prosecuted.

Was said appellee entitled to be subrogated to the rights of the Greensburg National Bank?

The appellant insists that, under the facts of this case, the said appellee is a "Volunteer," and that it is, therefore, not entitled to subrogation.

Mr. Pomeroy, in his work on equity (2d ed. §1211) says: "Under some circumstances, the payment of the amount due on a mortgage, when made by certain classes of persons, is held in equity to operate as an assignment of the mortgage. By means of the payment, the mortgage is not satisfied and the lien of it destroyed, but equity regards the person making the payment as thereby becoming the owner of the mortgage, at least for some definite purposes, and the mortgage as being kept alive, and the lien thereof as preserved for his benefit and se-

curity. This equitable result follows, although no actual assignment, written or verbal, accompanied the payment, and the securities themselves were not delivered over to the person making the payment, and even though a receipt was given speaking of the mortgage debt as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record. This equitable doctrine, which is a particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relation to the premises or to the other parties that his interests, recognized either by law or equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either in whole or in part, for his security and benefit."

In the case of *Walker* v. *King* (1872), 44 Vt. 601, it was held that when a party, not personally liable thereon, pays a debt secured by mortgage to protect some interest which he has in the property, he is not a mere volunteer and is entitled to subrogation. In *Walker* v. *King* (1873), 45 Vt. 525, there were three mortgages upon the land held by different parties. F. and M. purchased the mortgagors' equity of redemption and paid off the first, second, and a part of the third mortgage. These, they paid to protect their interest in the land, and it was held that they were entitled to be subrogated to the rights of those whose mortgages they had paid.

In *Chaffe & Bro.* v. *Oliver* (1882), 39 Ark. 531, the court, speaking of the doctrine of subrogation, said: "It rests upon the maxim that no one shall be enriched by another's loss, and may be invoked wherever justice and good conscience demand its application, in opposition to the technical rules of law, which liberate securities with the extinguishment of the original debt."

The facts involved in the case of *Southern Cotton Oil Co.* v. *Napoleon Hill Cotton Co.* (1913), 108 Ark. 555, 158 S. W. 1082, 46 L. R. A. (N. S.) 1049, are on all fours with the case at bar. In that case one Martin gave a mortgage upon the property involved to W. to secure the payment of an indebtedness of $1,600. Later he gave another mortgage upon the same property to Y. to secure the payment of an indebtedness of $800. Sometime after these mortgages were executed, the appellee in said cause obtained a judgment against said Martin which became a lien upon the lands mortgaged, but junior to said mortgages. Thereafter, Martin applied to the Southern Cotton Oil Company, appellant in said cause, to borrow money with which to pay off the two prior mortgages on the lands involved, and said oil company, not knowing actually of said judgment lien, loaned him the money with which to pay off said mortgages, and the same were paid off and satisfied of record. There was no agreement concerning subrogation between the parties, but the oil company believed its mortgage would be the first lien upon the property. In passing upon the question thus presented, and in holding that there was a right of subrogation, the court said: "It had the right after its mortgage was made to apply the money advanced in payment of the other mortgages and to take an assignment thereof to protect itself, and in holding that appellant became the equitable owner of said mortgages upon their payment with the money so advanced by it, and in applying the doctrine of subrogation the appellee company is in no worse position than it would have been if said mortgages had not been paid and no injustice is done it, for it cannot complain that the subrogation makes its position less favorable than it would have been if appellant company had not made the loan and advanced the money to pay off said mortgages. . . . Having made the pay-

ment, it was entitled to the benefit of the doctrine of subrogation, and became the assignee of the claims paid, and not being a volunteer or stranger, it is immaterial that a release instead of an assignment was made."

It is a distinct part of equity jurisdiction to give relief against mistake, where the rights of third persons have not intervened to be prejudiced thereby, and in both the case at bar, and in the *Southern Cotton Oil Co. case, supra,* there was a mistake, actual, as to there being any liens upon the lands involved other than the said mortgages. It is said in 25 R. C. L. 1322, §10, that: "The original limitation of the right to subrogation as it existed between principals and sureties, no longer exists, and the doctrine as now applied is broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which, in equity and good conscience, should have been discharged by the latter," and on page 1324, §11, of the same work, it is said: "While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet, it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another, for such a person can establish no equity. . . . A stranger or volunteer, as those terms are used with reference to the subject of subrogation, is one who, in no event resulting from the existing state of affairs, can become liable for the debt, and whose property is not charged with the payment thereof, and cannot be sold therefor." In *Union Mortgage & Trust Co.* v. *Peters* (1895), 72 Miss. 1058, 18 So. 497, 30 L. R. A. 829, it was said: "One who at the instance of the debtor advances money to be used by the debtor in the payment of a prior security, is not a stranger or intermeddler in his affairs," and authorities are there cited as sustaining the proposition announced. See, also, *Suppiger* v.

*Garrels* (1886), 20 Ill. App. 625; *Bennett* v. *Chandler* (1902), 199 Ill. 97, 64 N. E. 1052; *Mavity* v. *Stover* (1903), 68 Nebr. 602, 94 N. W. 834; *Arnold* v. *Green* (1889), 116 N. Y. 566, 23 N. E. 1; *Durante* v. *Eannaco* (1901), 65 App. Div. 435, 72 N. Y. Supp. 1048. These authorities establish the proposition that, where the person paying has an interest to protect, he is not a stranger, a volunteer. A volunteer, within the meaning of that term, as used in speaking of the right of subrogation, is one who is under no obligation to pay the debt, and who has no interest in or relation to the property involved. *Boley, Exr.*, v. *Daniel* (1916), 72 Fla. 121, 72 So. 644.

In *Cobb* v. *Dyer* (1879), 69 Me. 494, the plaintiff, a mortgagee, had paid off a mortgage on certain lands, being at the time in ignorance of an outstanding deed, and, on discovery of the existence of such deed, he asked to be subrogated to the rights of said mortgagee, basing his claim upon the fact of his mistake as to the existence of such outstanding deed. Subrogation was allowed, the court saying, *inter alia;* "Mistake is one of the fundamental grounds of equity jurisdiction."

In *Warford* v. *Hankins* (1898), 150 Ind. 489, 50 N. E. 468, it was said: "A person who may be compelled to pay a debt, or the protection of whose property or interest requires that he pay it, is not a volunteer. (Citing authorities.) Nor is one who pays a debt or advances money for the purpose, at the request of the debtor, a mere volunteer." (Citing authorities.)

In the case of *Barnes* v. *Mott* (1876), 64 N. Y. 397, 21 Am. Rep. 625, Barnes had purchased certain real estate which was encumbered by mortgage. It was also subject to a judgment lien of a judgment obtained against a prior owner, not his grantor. He had no actual knowledge of the existence of the judgment lien and paid off the said mortgage and the

same was satisfied of record.   In passing upon the question presented, the court said: "Upon payment of the mortgage by the then owners of the premises, they were entitled to all the rights of the mortgagee, and to an assignment of the mortgage; and having caused the same to be satisfied under circumstances authorizing an inference of mistake of fact, equity will presume such mistake and give the party the benefit of the equitable right of subrogation.   To do so in this case is to prevent manifest injustice and hardship, and interferes with no superior intervening equities."   See, also, *Fiacre* v. *Chapman* (1880), 32 N. J. Eq. 463; *Matteson* v. *Thomas* (1866), 41 Ill. 110; *Young* v. *Morgan* (1878), 89 Ill. 199; *Simpson* v. *Gardiner* (1881), 97 Ill. 237; *Greenwell* v. *Heritage* (1880), 71 Mo. 459; *Welton* v. *Hull* (1872), 50 Mo. 296.

Upon the undisputed facts of this case, the decree herein was right; we find no error prejudicial to appellants, and the decree is therefore affirmed.