### JOHN C. BEAVER

*v.*

### GIDEON SLANKER, Admr., etc.

1. SUBROGATION—*generally*—*and as to rights of a surety, and a purchaser from surety.* Where, at the time when the obligation of a principal and surety is given, a mortgage also is made by the principal to the creditor as an additional security for the debt, if the surety pays the debt he will, in equity, be entitled to have an assignment of the mortgage and to stand in the place of the mortgagee, and the mortgage will remain a valid and effectual security in favor of the surety for the purpose of reimbursing him, notwithstanding the obligation is paid. The mortgage is regarded as not only for the creditor's security, but for the surety's indemnity as well.

2. A mere stranger or volunteer can not, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor; but if the person who pays the debt was

compelled to do so, for the protection of his own interests and rights, the substitution should be made.

3.  Where a debtor gives personal security for his debt and also a mortgage on his land to the creditor, who recovers judgment against both the principal and surety upon the note given, which becomes a lien upon the land of the surety, and the surety then sells his land by warranty deed to another, after which his land so purchased is sold in satisfaction of the judgment, and the purchaser is compelled to purchase the certificate of purchase to save his land, and takes an assignment of the mortgage, the grantee of the surety so paying will be entitled to be subrogated in equity to the rights of the creditor, and to have the mortgage foreclosed to indemnify him for the sum so paid by him.

4.  Where a person gives a note with personal security for a debt, and also a mortgage on his land as a further security, the surety, or his grantee of land upon which a lien was created by judgment for the debt before the execution of his deed, who is compelled to pay a portion of the debt, will be entitled to have the mortgage, if duly recorded, foreclosed as against purchasers of the mortgagor, the record of the mortgage being notice to them when they purchased.

5.  NOTICE *to purchaser, of suretyship.* Where a party derives title to land through an administrator's sale under an order of court, and from the purchaser at that sale, and the record of the court shows that the sale was to be on credit and that the purchaser was to give a mortgage on the land purchased and a note with personal security, and a sale to the grantor of the party who alone gives a mortgage, this will be sufficient notice to such party purchasing from the mortgagor that he was the principal and the other persons signing the note were his sureties.

6.  CHANCERY—*variance in bill and proof.* Where a bill in chancery alleged the recovery of a judgment on or about the —— day of November, 1872, against several, which became a lien upon the lands of one from whom the complainant afterwards purchased, while the proof showed that the judgment was recovered in April, 1869: *Held,* that the allegation of the time of obtaining the judgment was not of a descriptive character of the judgment, and that the variance was not material, the substantial question being whether the judgment became a lien on the land before its purchase. So, it is no fatal objection that the amount of the judgment is not correctly given, when it was in fact for more than is stated.

7.  MISTAKE—*and notice thereof to purchasers.* Where the name of the mortgagee is by mistake written in the blank for the mortgagor, and the name of the mortgagor in that left for the mortgagee, but is signed by the right party, and purports to secure a debt from the party signing to the other, and is acknowledged by the party signing, the mistake in the trans-

position of the names of the parties being palpable, its record will be notice to subsequent purchasers from the mortgagor of the mistake.

8. SAME—*correcting on foreclosure under bill.* Where a bill to foreclose a mortgage alleges a mistake therein in the transposition of the names of the parties in the commencement, but does not ask specifically for its reformation, and the decree finds the fact of the mistake, but does not in express terms order its correction, but orders a sale, this will be treating the mortgage as corrected, and may be done under the general prayer.

WRIT OF ERROR to the Appellate Court of the Fourth District.

In the year 1866, Victor Buchanan, as administrator *de bonis non* of the estate of John C. Riley, deceased, in pursuance of an order of the county court of Lawrence county, sold at public sale divers tracts of lands belonging to the estate of said Riley.

Israel A. Powell became the purchaser for the price of $4178. The order of sale made by the county court required notes, with approved personal security and a mortgage on the lands sold, to be given to secure the payment of the purchase money. Powell accordingly, on July 14, 1866, gave to Buchanan, administrator, his note for the purchase price named, with Johnson and Abernathy as sureties, and also a mortgage on the lands purchased, to secure the payment of the note, the mortgage being duly recorded.

In April, 1869, Buchanan, administrator, obtained a judgment in the circuit court of Lawrence county on the note for a remaining unpaid portion thereof, against Powell, Johnson and Abernathy. Johnson at that time held land upon which the judgment became a lien.

The judgment was made upon execution out of Powell's property, except about $500, which remained unsatisfied until in 1873. In 1870 Johnson sold and conveyed his land, which was subject to the lien of this judgment, to Gustave Kleinworth, by deed, with full covenants of warranty. In 1873 an execution issued upon the judgment was levied upon this land so sold by Johnson to Kleinworth, as the land of

12—94 ILL.

Johnson, a co-defendant in the judgment, bound by the lien of the judgment, and the land was sold under the execution February 2, 1874, to D. L. Gold, for $603.40, and the execution was returned March 1, 1874, as satisfied in full by such sale.   Gold was the administrator of the estate of Henrietta Riley, one of the two children and heirs of John C. Riley. On April 20, 1869, Buchanan, administrator of John C. Riley, in settlement of the latter's estate, turned over and assigned to Gold, administrator of the estate of Henrietta Riley, the unpaid portion of said judgment, and at the same time assigned to Gold the mortgage which had been given by Powell to Buchanan at the administrator's sale by the latter.

In January, 1875, Kleinworth, the previous purchaser from Johnson of the land sold under the execution, bought of Gold his certificate of purchase of the land under the execution, paying him therefor $659, and Gold assigned to Kleinworth the certificate of purchase, as also the said mortgage.

The bill in this case was filed by Kleinworth, asking to be subrogated to the rights of Victor Buchanan, administrator, as the same stood before the said sale of said land under execution, and for the foreclosure of the aforesaid mortgage. Kleinworth died during the progress of the cause, and in his place Gideon Slanker, his administrator, was substituted as a party.

Powell had made sale and conveyance of the several tracts of land described in the mortgage, at different times to different purchasers, Beaver being the last, on May 2, 1868.

The circuit court decreed in favor of the complainant to the extent of the amount he paid Gold for his certificate of purchase of complainant's land, and that the mortgaged lands be sold for the satisfaction of such amount in the inverse order of their alienation by Powell.   On appeal by Beaver to the Appellate Court for the Fourth District, the decree was affirmed, and Beaver brings the case here on writ of error to the Appellate Court.

Mr. S. W. SHORT, for the plaintiff in error:

It is a settled rule that the decree must conform to the allegations in the pleadings as well as the proofs. *Crocket* v. *Lee*, 7 Wheat. 522; *Conwell* v. *McCowen*, 53 Ill. 363; *Morrison* v. *Tillson*, 81 id. 607.

And however just the demand proven by the complainant may be, if his proof does not harmonize with the allegations of his bill he can not recover. *Smith* v. *Axtell*, Saxton, 494; *Piatt* v. *Vattier*, 9 Pet. 405; *Lindsy* v. *Ethridge*, 1 Dev. & Bat. Ch. 36.

It can not be contended that Kleinworth was in any sense a surety for the payment of the debt secured by the mortgage. Johnson and Abernathy were the only sureties. Therefore the doctrine of subrogation can have no application to him. It is confined to the relation of principal and surety, guarantors, and to cases where a person to protect his own junior lien is compelled to remove one which is superior, and to insurers paying losses. *Bishop et al.* v. *O'Conner et al.* 69 Ill. 431; *Wilson* v. *Brown et al.* 1 Beasley, 246.

Kleinworth was neither, but voluntarily purchased of Johnson long after the lien attached, and had constructive notice thereof. He is not entitled to the dignity of a stranger paying the debt of another, much less that of a co-surety; and even that relation would not entitle him to be subrogated to the creditor's rights, without an agreement to that effect between him and the vendees of Powell. *Sanford* v. *McLean*, 3 Paige, 117; *Banta* v. *Garmo*, Sandford, 384; *Wilkes* v. *Harper*, 1 Comstock, 586; *The Bank of the United States et al.* v. *Winslow's Executors et al.* 2 Brockenbrough, 252, 254; *Douglass* v. *Fogg*, 8 Leigh, 588, 602. See, under the leading case of *Dering* v. *Earl of Winchelsea*, (2) p. 115 of 1 White & Tudor's Leading Cases in Equity.

But the mortgage itself is inoperative as against appellant. It is, in legal effect, a deed from Buchanan to Powell, as, in the granting clause, Buchanan is the *grantor* and ·Powell the *grantee;* and the fact that Powell signed and acknowledged

the deed does not change its character as a notice to others. It purports on its face to be a conveyance from Buchanan to Powell, and the recording of it was notice of that fact, and was not notice of a conveyance from Powell to Buchanan. And in such case, before the mortgage can be *reformed* as against appellant, it must be averred in the bill and proven that he purchased with actual notice of the mortgage and mistake therein.

In cases of mistake in written instruments as against *bona fide* purchasers for a valuable consideration without notice, courts of equity will grant no relief. Story Eq. Jur. sec. 165; *Sickmon* v. *Wood,* 69 Ill. 331. There was no such allegation and no such proof in this case.

There is no prayer in the bill for the reformation of the mortgage, and none has ever been made. Buchanan, as administrator, made no attempt at its reformation or foreclosure during his administration, but elected to proceed to judgment at law upon the note against the joint makers thereof, which became a lien upon Johnson's land as aforesaid long before Kleinworth's purchase,—and as between Kleinworth and Beaver the equity is with the latter, for Kleinworth had legal notice of the lien of the judgment upon his land when he purchased it, but Beaver had no notice of the mortgage, but in good faith paid the value of his land to Powell, as appears upon the face of said conveyance from Powell and wife to him. And complainant having wholly failed to show, by proof or otherwise, that Beaver was not a *bona fide* purchaser in good faith for a valuable consideration, with actual notice of said mistake in said mortgage, the same can not be corrected to afford the relief decreed. The complainant's bill is defective. It has the peculiarity that there are no two allegations of material matter that harmonize with each other, much less with the evidence adduced.

Messrs. WILSON & HUTCHINSON, for the defendant in error:

In the body of this mortgage the name of the mortgagor was by mistake written in the blank left for the name of the mortgagee, and the name of the mortgagee in the blank left for the mortgagor; but the mortgage is in all other respects correct. It was signed, sealed and duly acknowledged by Powell as the grantor therein, and showed upon its face that the exchange of names in it was a clerical error, and it purported to be a mortgage on this *identical land* and for the true amount of money.

It is also urged that the sale of Johnson's land on execution for the full amount of the judgment was a satisfaction of the judgment, and that the "payment of a debt which is secured by a mortgage is a satisfaction of the mortgage." This is a fallacy,—a good rule falsely applied. The payment of a debt by a *personal surety* is *not* a satisfaction of the mortgage, but only transfers it.

It is also urged that Kleinworth has no right here because "there was no assignment of the note, which is always necessary to carry the mortgage." We answer, there was no note to assign. It had been merged in the judgment, and the *certificate of purchase* issued in pursuance of sale under that judgment represents the same debt; and its assignment, with the accompanying agreement, carried with it the mortgage, just as the assignment of the note would have done before it was merged.

Having, then, a valid mortgage (capable of being reformed and enforced) which was not satisfied in equity, the only remaining question is, can Kleinworth be subrogated so as to be reimbursed out of the mortgage security, there being no dispute that he has paid the mortgage debt.

It needs neither argument nor citations to establish the point that if either of the sureties on Powell's note had been compelled to pay it, by suit or otherwise, the mortgage would not thereby have been extinguished, but would by operation of law have been transferred to the paying surety. *Phares*

v. *Barbour*, 49 Ill. 509. That furnishes the most usual ground for subrogation. But here, the judgment became a lien on the land of Johnson, one of the sureties; and Kleinworth, a purchaser from this surety, was, by reason of the insolvency of the surety, compelled to pay the debt, or lose a farm worth ten times the amount of the debt. This was no voluntary payment. The surety on the note was, in legal contemplation, secured against loss, by the mortgage. The money was made out of *his* land; but to save the title of this land, Kleinworth advanced the money, under an agreement that he should be reimbursed out of the mortgage security. Bouvier's Dictionary, title, Subrogation; 2 Binney's Rep. 382; White's Leading Cases in Eq. 60–72.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

As a mere assignee alone of the mortgage, the complainant might not be able to sustain this decree in his favor, as the judgment for the mortgage debt was satisfied in full by the sale under execution of Kleinworth's land.

But, upon the doctrine of subrogation, we think there is sufficient support for the decree.

It is the undoubted principle of equity, that if, at the time when the obligation of the principal and surety is given, a mortgage also is made by the principal to the creditor, as an additional security for the debt, then, if the surety pays the debt, he will be entitled to have an assignment of the mortgage and to stand in the place of the mortgagee, and that the mortgage will remain a valid and effectual security in favor of the surety for the purpose of obtaining his reimbursement, notwithstanding the obligation is paid. The mortgage is regarded as not only for the creditor's security, but for the surety's indemnity as well. 1 Story Eq. Jur. § 499; *Rogers* v. *School Trustees*, 46 Ill. 428; *Phares* v. *Barbour*, 49 id. 370; *Jacques* v. *Fackney*, 64 id. 87; *City National Bank of Ottawa* v. *Dudgeon*, 65 id. 12; *Bishop* v. *O'Conner*, 69 id. 431.

There can be no question, in the case of Johnson himself, the surety, had the land been sold while he owned it, in satisfaction of the judgment, that he would have been entitled to maintain such a bill as the present. The only doubt is, whether the principle in question, of subrogation, applies in favor of a purchaser of the land from Johnson, the judgment against the latter being a lien upon the land purchased. We are of opinion it does. Kleinworth did not make the payment which he did for the certificate of purchase of his land, as a mere stranger or volunteer, but he made it standing in privity with Johnson, the surety, as his assignee of land incumbered with the lien of the judgment against Johnson as surety; and he made it compulsorily, to save to himself his land which had been sold as being bound by this judgment lien. In *Hough* v. *Ætna Life Insurance Co.* 57 Ill. 318, and in *Young* v. *Morgan*, 89 id. 199, this court recognized the doctrine that a mere stranger or volunteer could not, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor; but that if the person who paid the debt was compelled to pay, for the protection of his own interests and rights, then the substitution should be made.

Further, the present proceeding is in the interest of the surety, Johnson, it being in the indirect assertion of his right of indemnity from the mortgaged premises. Johnson sold and conveyed to Kleinworth with covenant of warranty, and so was responsible to the latter for the goodness of the title. Kleinworth, instead of resorting to Johnson, on the latter's covenant of warranty, and leaving Johnson to have recourse over to the mortgage, proceeds directly against the mortgaged property, which is ultimately liable for the mortgage debt, and in obtaining satisfaction therefrom for the portion of the mortgage debt the sale of his land discharged, secures full indemnity for the surety, Johnson, and thus avoiding circuity of action.

And this meets the suggestion, that, in relief of the appel-

lant and other purchasers from Powell, the recourse of Klein-worth should have been against Johnson on his covenant of warranty. If that had been done, then Johnson himself would have been subrogated to the rights under the mortgage, so that, in the end, the result to appellant would have been the same—the subjecting of the mortgaged premises. There is, besides, reason to believe that suit upon the covenant of warranty would have been unavailing. Johnson has deceased, and the records of the probate court show his estate to be insolvent. To be sure, this showing is in respect of personalty only, and there is a possibility of the decedent having left lands which might respond upon the covenant of warranty; nothing appears as to this.

The circumstance of Powell having sold the mortgaged lands, and they now being in the hands of purchasers from him, should make no difference. Such purchasers occupy no better position than Powell himself. The mortgage was upon record, and they bought with notice that the lands were mortgaged; that they stood as security for the payment of this mortgage indebtedness, and as indemnity to the sureties against its payment, and that they were liable to be resorted to and sold for the purpose of such security and indemnity.

They are now proceeded against but for such purpose, and these purchasers have no equitable cause of complaint.

If it be regarded important that they should have had notice that Johnson and Abernathy were sureties only, we think they were chargeable with such notice.

The proceedings of the county court under whose order of sale the administrator's sale of these lands of Riley was made, were a link in the chain of title of the mortgaged lands, and purchasers from Powell must be held as having notice of them. These proceedings show that the sale was to be on a credit, and that the purchaser was to give a mortgage on the land purchased, and a note with personal security; they show the sale of the lands to Powell, and Powell alone gives the mortgage on the lands purchased. These circumstances, we

think, afford notice that Powell was the principal in the transaction, and Johnson and Abernathy but his sureties. The answer of Beaver, too, admits such suretyship.

There are some minor questions made, which remain to be considered.

The bill alleges, under a *videlicet*, that the judgment was obtained against Powell, Johnson and Abernathy about the —— day of November, 1872. The proof shows it was rendered in April, 1869. It is insisted that in this respect there is a fatal variance between the allegations and proof.

The bill alleges the events correctly; that the judgment became a lien upon this land of Johnson, which he then owned, and that he afterward sold the land to Kleinworth.

The allegations of the bill and the proofs show that the judgment became a lien upon the land while owned by Johnson, and before his conveyance of it to Kleinworth. The allegation as to the time of obtaining the judgment is not one of a descriptive character as respects the judgment, and does not purport to state with exactness the time when it was recovered. We find no merit in this objection.

The same may be said in regard to the amount of the judgment. The allegation of the bill is, that the judgment was obtained "for the sum of, to-wit: about $500 and costs of suit, being, in all, a sum not now known to your orator." The proof shows the amount of the judgment to have been $2562.44.

A further objection is, in respect of a mistake in the mortgage from Powell to Buchanan. In the body of the mortgage, in the granting part, the name of the mortgagor appears written in the blank left for the name of the mortgagee, and the name of the mortgagee in the blank left for the mortgagor, the mortgage in all other respects being correct. It is urged that, although as between the parties to the mortgage, this was a mistake that might have been corrected, yet, as against Beaver, an innocent subsequent purchaser from Powell of the mortgaged land, he not knowing of the mistake, the mortgage

could not be reformed; that he, not having such knowledge, would be entitled to hold the land unaffected by the mortgage, and so was not compelled to pay the mortgage debt, for the protection of his title to the land. We think Beaver had notice of the mistake from the recording of the mortgage.

The mortgage was signed by Powell, not Buchanan; it purported to secure a debt from Powell to Buchanan, not one from Buchanan to Powell; and the certificate of acknowledgment expressed that the mortgage was acknowledged by Powell. The mistake in the transposition of the names of mortgagor and mortgagee was palpable upon the face of the mortgage.

It is objected that there is no prayer in the bill for the reformation of the mortgage, and no decree made therefor. The bill does not ask specifically for the correction of the mistake, nor does the decree by express words order the correction of the mistake; but the bill alleges the mistake, and contains the general prayer for relief; and the decree finds the fact of the mistake, and, if not in terms decreeing its correction, it treats it as corrected, in declaring the mortgage to have been made by Powell, and the mistake in it to be apparent upon reading the whole mortgage, and ordering the sale of the mortgaged land for the satisfaction of the mortgage debt. We find nothing substantial in this objection.

The decree will be affirmed.

*Decree affirmed*