# Elyton Land Co. *v.* Mingea.

*Action for Damages for Personal Injuries.*

1. *Personal injuries to person riding in vehicle, caused by negligence of defendant street railway; contributory negligence of driver.*—In an action to recover damages for personal injuries sustained by plaintiff by being thrown from a vehicle in which he was riding, as it attempted to cross the defendant's street railway track, which was not in proper condition and repair, the contributory negligence of the driver of the vehicle can not be imputed to the plaintiff, who had no control over him and did not select him.

2. *Same; common employees, or servants in same business.*—The fact that the plaintiff and the driver of the vehicle in which he was riding were both firemen in the employment of the city, and were going to a fire in answer to an alarm, as required by their common business and duty, does not take the case out of the principle above stated, nor render the plaintiff liable for the careless or reckless driving of the driver.

3. *Same; contributory negligence in failing to notify driver of bad condition of railway track, or warning him against fast driving.*—If the plaintiff knew the bad condition of the street at the crossing, caused by the defects in the railway track, his failure to notify the driver of that fact, or to warn him against fast driving at that point, does not amount to contributory negligence as matter of law, but is properly submitted to the jury as a question of negligence in fact.

89 521
93 136

89 521
94 500

89 521
97 331

89 521
119 593

89 521
f121 658

89 521
e132 516

[Elyton Land Co. v. Mingea.]

4. *Same; general carelessness or incompetency of driver, and knowledge thereof by plaintiff.*—When there is no evidence tending to show that the driver of the vehicle was not generally careful and competent for the discharge of his duties, or that plaintiff had reason to believe him imprudent, all charges asked, based on this idea of contributory negligence on his part, are properly refused.

5. *Same; contract between defendant and city, as evidence*—The defendant's street railway having been constructed under a contract with the municipal authorities of the city, by which it assumed the duty of keeping the streets occupied by it in a reasonable state of repair for the safe passage of travellers, as the city was bound to do; the contract is admissible as evidence for the plaintiff, in an action to recover damages for personal injuries resulting from the bad condition of the track at a street crossing, not as showing a breach of contract, but a tort committed under the license of the contract.

6. *Amendment of complaint.*—In an action to recover damages for personal injuries sustained by plaintiff by being thrown from a vehicle at a street crossing of the defendant's railway track, the complaint may be amended so as to describe more fully the nature of the negligence imputed to the defendant,—as, its failure to keep the road-bed in a reasonably safe condition at that point.

7. *Same; statute of limitations.*—Where the original complaint claims damages for personal injuries alleged to have been caused by defendant's negligent failure to keep its street railway track in proper condition, whereby plaintiff was thrown from a vehicle in which he was crossing it; an amended count, setting out a municipal ordinance which specified the duties required of street railway companies in keeping their tracks in safe and proper condition, does not introduce a new cause of action, nor is the statute of limitations available as a defense against it.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Samuel M. Mingea against the appellant corporation, as the owner of a street railway in the city of Birmingham, to recover damages for personal injuries sustained by plaintiff by being thrown from a horse-cart, or carriage, in which he was being driven to a fire in discharge of his duties as a fireman of the city. The accident occurred in April, 1887, and the action was commenced within three months afterwards, but at what time the record does not show, nor is the summons copied into the transcript. The plaintiff sustained serious injuries by the accident, one of his legs being broken, and the jury awarded him $6,000 damages.

The original complaint contained two counts, each of which alleged that the plaintiff, at the time of the accident, was in the employment of the city of Birmingham as a fireman, and was being driven to the scene of a reported fire in the discharge of his duties as a fireman. The first count negatived fault or negligence on the part of the plaintiff, and alleged that the accident, by which the hose-carriage was overturned

while attempting to cross the defendant's railway track at the intersection of a street and avenue in the city, "was caused by the fact that the iron rails of said defendant's street railway at that point were carelessly, negligently, wrongfully and unlawfully kept and maintained by said defendant without ballast, or side rails, or filling in, or being surfaced, and were in bad repair, and not in condition to admit of the unobstructed passage of vehicles along and across said street." The second count set out the contract between the defendant and the municipal authorities of the city of Birmingham, under which said street railway was constructed, and which bound the defendant "to keep said railway surfaced and in good repair and condition for the unobstructed passage of vehicles;" and alleged that the railway "was not surfaced and ballasted, and in good condition and repair," &c. Each of these counts was afterwards amended, against the objection and exception of the defendant, by alleging that said defendant was also "guilty of carelessness, recklessness and gross negligence, in failing to keep its said railway track and road-bed in a reasonably safe condition at the point" where the accident occurred.

In May, 1888, a third count was added to the complaint by amendment, which set out an ordinance of the city of Birmingham prescribing the duties and liabilities of street railway companies, and alleged that the hose-carriage in which plaintiff was riding was overturned "by reason of the fact that the rails of defendant's said dummy line were not ballasted nor graded;" and that defendant "was guilty of gross negligence in violating said ordinance, in failing to lay the ties of said dummy line so as to prevent hindrance to the free passage of vehicles, and in failing to have said dummy line properly filled in and ballasted according to said ordinance," &c. The defendant demurred to the whole complaint as amended, and to each count thereof, the ground of demurrer specially assigned to the third count being, "that it introduces a new and independent cause of action;" but the record does not show any ruling by the court on the demurrer. To the original complaint the defendant pleaded not guilty and contributory negligence, and afterwards filed several special pleas of contributory negligence in different particulars, as afterwards insisted on before the jury in charges asked and refused. The record does not show that a demurrer was filed to any of these special pleas, and the judgment-entry only recites that the cause was tried on issue joined.

[Elyton Land Co. v. Mingea.]

On the trial, as the bill of exceptions shows, the plaintiff offered in evidence the contract between the defendant and the city authorities of Birmingham, under which the defendant's street railway was constructed, and also the municipal ordinances of the city prescribing the duties and liabilities of street railways; and the court admitted the evidence against the objection and exception of the defendant. The defendant reserved several exceptions to the charge given by the court *ex mero motu*, and to *six* charges given on request of the plaintiff; and also reserved separate exceptions to the refusal of *twenty-four* charges asked in writing by defendant. The opinion states the main points involved in these several charges. The assignments of error, *thirty-nine* in number, embrace all the adverse rulings of the court on the pleadings and evidence, charges given, and the refusal of the charges asked.

A. T. LONDON, for appellant.—(1.) The city was bound to keep its streets in a reasonably safe and passable condition.—2 Dill. Mun. Corp., 788, 917; *Campbell v. City Council*, 53 Ala. 527; *City Council v. Wright*, 72 Ala. 411; *Atlanta v. Wilson*, 27 Amer. Rep. 398, note. (2.) By its contract with the city, the defendant became substituted for the city, and owed the public the same measure of duty that the city did, and is liable for the same measure of damages; but the contract does not give the public any rights under it.—*Brooklyn v. Railway Co.*, 47 N. Y. 475; 7 Amer. Rep. 477; 4 Amer. Rep. 603; 1 Suth. Damages, 758. (3.) The plaintiff was bound to allege and prove that the company knew, or ought to have known, of the defect in the street. Deering Neg., § 189; *City Council v. Wright*, 72 Ala. 415; *Brooklyn v. Railway Co.*, 47 N. Y. 475. (4.) If the plaintiff knew of the defect in the street, and permitted the driver to drive over it at a high rate of speed without notifying him of the danger, he was guilty of negligence which would prevent a recovery of damages.—*City Council v. Wright*, 72 Ala. 415; *O'Brien v. Tatum*, 84 Ala. 186; *Butterfield v. Forrester*, 11 East, 6; Deering Neg., § 189; Shear. & Redf. Negligence, § 101; Beach Contr. Negligence, §§ 4, 77. (5.) When a party knows of an obstruction, and attempts to pass the place in the dark when he can not see it, he is guilty of contributory negligence.—*Brucker v. Covington*, 35 Amer. Rep. 202; *Schaeffler v. Sandusky*, 31 Amer. Rep. 533; *King v. Thompson*, 30 Amer. Rep. 364;

*Erie City v. Magill,* 47 Amer. Rep. 739, notes; *Railroad Co. v. Pittsburgh,* 49 Amer. Rep. 580.   (6.) The negligence of the driver of the vehicle was imputable to the plaintiff himself.   It is not disputed that a person riding with another for hire, or by invitation, is not chargeable with the negligence of the driver.—*Robinson v. Central Railroad Co.,* 66 N. Y. 11; 23 Amer. Rep. 1, and note.   But these cases rest on the proposition, that there is no connection between the driver and the person riding with him; and it is equally well settled, that when the two are engaged in a joint enterprise, each is responsible for the negligence of the other. Here, the plaintiff and the driver both were in the employment of the city as firemen, and each assumed the risks incident to their common employment, one of which was the negligence of his fellow-servants of the same grade.—*Holborn's Case,* 84 Ala. 133; 7 Amer. & Eng. Encyc. Law, 821. (7.) Driving at a prohibited rate' of speed is negligence, even in case of a fire.—17 Atl. Rep. 188; 11 East, 6; Deering Neg., §§ 126, 190.   (8.) The amendment presented a new cause of action, which was barred by the statute of limitations.—*Mohr v. Lemle,* 69 Ala. 180.

TALIAFERRO & SMITHSON, *contra.*—(1.) That plaintiff was not chargeable with the negligence of the driver of the vehicle, see *Little v. Hackett,* 116 U. S. 366; *Bennett v. Railroad Co.,* 36 N. J. Law, 225; *Railroad Co. v. Steinbrenner,* 47 N. J. L. 161; *Chapman v. Railroad Co.,* 19 N. Y. 341; *Dyer v. Railroad,* 71 N. Y. 228.   (2.) The rule which governs risks incident to a common employment, and makes each servant assume the risk of negligence on the part of his fellow-servant, applies only to actions against the common employer, which is not this case.   (3.) There can be no doubt that the injury was caused by a defect in the street caused by the defendant's track; and this was negligence for which the defendant was liable.   The verdict settles this question.—36 Ohio St. 86-91; 105 Ill. 364; 2 Metc. Ky. 119; 9 Bush, Ky. 728; 46 Mich. 596.   (4.) The amendments introduced no new cause of action, and were properly allowed.—69 Ala. 180; 76 Ala. 329; 74 Ala. 170; 73 Ala. 595; 71 Ala. 563.

SOMERVILLE, J.—The plaintiff, as an employee of the fire department of Birmingham, while riding on a hose-cart, or reel, in the regular pursuit of his duties as a fireman, was

injured badly by the capsizing of the vehicle, as it turned suddenly from 22d street into Avenue A, which intersected the street at right angles. The horses of the cart were driven by one Mullins, also a fireman, and were under his exclusive control. The alleged cause of the accident was the impinging or concussion of the cart wheels on the iron rails of the defendant's dummy line railway, which projected above the surface of the track. The evidence tended to show that the condition of the dummy or street railway track was bad, and had become dangerous for the passage of vehicles, by reason of being defectively ballasted and surfaced; and that the duty of keeping the track in good condition devolved on the defendant as owner of the line, and by special contract with the city. The action is alleged to have been caused by the negligence of the defendant in failing to keep its track in proper repair.

1. The court charged the jury, that the negligence of Mullins, the driver of the hose-carriage, could not be imputed to the plaintiff, and would be no bar to his recovery in the present action, provided the plaintiff himself was guilty of no negligence. And many charges, requested by the defendant, were refused, which sought to impute the alleged negligence of the driver to the plaintiff, although the latter had no control over the management of the hose-carriage, or the control of the horses attached to it.

The question raised by these rulings is the old one first decided in the familiar and much criticized English case of *Thorogood v. Bryan*, 8 C. B. 115 (1849), and followed afterwards in *Armstrong v. Lancashire & Yorkshire Railway Co.*, (Law Rep.) 10 Ex. 47 (1875). The action in that case was one founded on Lord Campbell's act, in which the deceased, a passenger in an omnibus, as he was alighting, was knocked down and killed by collision with another omnibus belonging to the defendant. The defense interposed was the contributory negligence of the driver of the vehicle in which the plaintiff was riding. The question was, whether a passenger in an omnibus is to be considered so far identified with the owner, that negligence on the part of the owner, or his servants, is imputable to the passenger himself.

It is difficult to perceive any sound principle upon which the case of *Thorogood v. Bryan* can be maintained; and it is now admitted on all sides, by the great and increasing weight of authority, that the decision rests on indefensible ground. In this State I find two cases opposed to it in

principle, and none in support of it. In *Otis v. Thom*, 23 Ala. 469, (1853) where a stage-coach in a ferry-boat was lost by negligent collision with a steamboat, and an action was brought against the latter by the owner of the coach, it was decided that the contributory negligence of the ferry-man was a fact entirely irrelevant to the issue of the defendant's liability. So, in the recent case of *Georgia Pacific Railway Co. v. Hughes*, 87 Ala. 610—an action for personal injuries sustained by the plaintiff through the negligent collision of two railroad trains at a crossing—it was held that the contributory negligence of the plaintiff's carrier was no bar to plaintiff's recovery, not being imputable to him.

In *Little v. Hackett*, 116 U. S. 366, (1885) the decision in *Thorogood v. Bryan* was fully discussed, and utterly repudiated, not only as indefensible in principle, but as opposed to the weight of American authority, as to which latter point there seems now to be no question. Mr. Justice Fields uses this language: "The identification of the passenger with the negligent driver, or owner, without his personal co-opperation or encouragement, is a gratuitous assumption. There is no such identity. The parties are not in the same position. The owner of a public conveyance is a carrier, and the driver or the person managing it is his servant. Neither of them is the servant of the passenger, and his asserted identity with them is contradicted by the daily experience of the world."

It is needless to review the cases on this subject. This view is concurred in by a strong current of American authority, the doctrine of *Thorogood v. Bryan* being now disapproved by the highest courts of Alabama, New York, New Jersey, Maine, New Hampshire, Maryland, Ohio, Illinois, Indiana, Kentucky, Minnesota, Michigan, California, and other States. In a few States it has been adopted, in a modified form, some of the courts repudiating the reason on which the doctrine was founded by the English Courts.—*Ga. Pac. Railway Co. v. Hughes*, 87 Ala. 610; *Robinson v. N. Y. Cent. R. R. Co.*, 66 N. Y. 11; 23 Amer. Rep. 1, and note p. 4; *New York & Lake Erie R. R. Co. v. Steinbrenner*, 47 N. J. Law, 161; 54 Amer. Rep. 126; *Noyes v. Boscawen*, 64 N. H. 361; 10 Amer. St. Rep. 410, note p. 419; *Borough of Carlisle v. Brisbane*, 113 Penn. St. 544; 57 Amer. Rep. 483, and note, p. 488, 511, and cases cited; *Nesbit v. Town of Garner*, 75 Iowa, 314; 9 Amer. St. Rep. 486; note p. 491; *Wabash, St. Louis & c. Railway Co v. Shacklet*, 105 Ill. 364; 44 Amer. Rep.

[Elyton Land Co. v. Mingea.]

791; *Transfer Co. v. Kelly*, 36 Ohio St. 86; 38 Amer. Rep. 558; *Cuddy v. Horn*, 46 Mich. 596; 41 Amer. Rep. 178; *Brown v. N. Y. Cent. R. R. Co.*, 88 Amer. Dec., note, p. 359; 1 Shearman & Redfield on Negligence, 4th Ed. 66; Beach on Contrib. Negl., 111, 114; Campbell on Negl., 2d Ed. 185; 1 Smith's Lead. Cases, 4th Ed. p. 220, note *a*.

Added to this vast array of authorities is the crowning fact, that the case of *Thorogood v. Bryan* has recently been expressly overruled by the English Court of Appeals, after having been weakened by constant criticism from the English bench and bar for more than thirty years. In the case of *The Bernina*, 12 Prob. Div. 58, decided as late as 1887, in an able and elaborate review of the authorities, both English and American, Lord Esher, the Master of Rolls, observes, that the court "can not see any principle on which it can be supported;" that "the preponderance of judicial and professional opinion in England is against it, and that the weight of judicial opinion in America is also against it." "We are of opinion," he concludes, "that the proposition in it [meaning the case of *Thorogood v. Bryan, supra*] is essentially unjust, and inconsistent with other propositions of law." Lindley and Lopes (L. JJ.) concur in opinions fully discussing the subject, the former observing: "The doctrine of identification laid down in *Thorogood v. Bryan* is to me quite unintelligible. It is, in truth, a fictitious extension of the principles of agency; for to say that the driver of a public conveyance is the agent of the passengers, is to say that which is not true in fact. Such a doctrine, if made the basis of further reasoning, leads to results which are wholly untenable; *e. g.*, to the result that the passengers would be liable for the negligence of the person driving them, which is obviously absurd, but which, of course, the court never meant."

The doctrine of *Thorogood v. Bryan;* 8 C. B. 115, may now be considered as effectually exploded on both sides of the Atlantic. And the rule must be regarded as now fully settled, both in England and America, and certainly in this State, that the negligence of the driver of a vehicle can not be imputed to a passenger therein, when the passenger is free from personal negligence, and has no control over the driver, and has not been guilty of any want of care in his selection. The Circuit Court did not err in charging this to be the law, and in refusing to give the numerous charges asserting a contrary doctrine.

2. It is insisted, however, that the above rule has no

[Elyton Land Co. v. Mingea.]

application to this case. The réason for this contention is said to be, that the plaintiff, Mingea, and the driver of the hose-cart, Mullins, were in the common employment of the city of Birmingham as firemen, and were, at the time of the injury, engaged in a joint enterprise, and for this reason the contributory negligence of the one should be imputed to the other. There is a class of cases where such a principle is recognized, but we discover no evidence in the record which would justify the inference that this case falls within that class. Where several persons are engaged in a joint enterprise, so that each is mutually responsible for the acts of the other, and no one has any exclusive control of the vehicle or vessel in which all are travelling, the one in management may be regarded as the agent of the others; and in such cases the rule we have first above announced would have no application, that rule being based on the fact, that there is no relation of principal and agent between the driver of a vehicle and one who rides with him without authority to control him in its management.—*Beck v. E. R. Ferry Co.*, 6 Rob. 82; *Robinson v. N. Y. Cent. R. R. Co.*, 23 Amer. Rep. 1, 3; *Nesbit v. Town of Garner*, 9 Amer. St. Rep. 486. The charges based on this contention were abstract, not being supported by the evidence, and there was no error in refusing them.

3. It is not negligence *per se*, for one who knows the dangerous condition of a highway to persist in travelling over it. He may lawfully proceed to do so, if the act, under the circumstances of the particular case, does not evince a want of ordinary care on his part.—*City Council of Montgomery v. Wright*, 72 Ala. 411; 47 Amer. Rep. 422; *Henry County Turnpike Co. v. Jackson*, 44 Amer. Rep. 274; *note*, p. 276; *Town of Albin v. Hetrick*, 46 Amer. Rep. 230; Thompson on Neg. 203. *A fortiori* does this principle apply to one who rides with another, and has no authority to control the team, or to dictate the route the vehicle should go. Whether the plaintiff, therefore, was negligent in not warning the driver as to the rate of speed he was going, or in not calling his attention to the defect in the highway, if in fact he so failed to do, was a question of fact for the determination of the jury, and not a question of law to be decided by the court. It was properly submitted to the jury, and there was no error in refusing such of the defendant's charges as sought to take away from them its decision by devolving this inquiry on the court.

34

[Elyton Land Co. v. Mingea.]

4.  There is no evidence tending to show that the driver was not generally careful and competent for the discharge of his duties, or that the plaintiff had reason to believe him imprudent; and all charges based on this idea of any contributory negligence on the plaintiff's part, were properly refused.   In the absence of such evidence arising from the case made by the plaintiff, the *onus* was on the defendant to prove such contributory negligence.

5.  The contract between the city of Birmingham and the defendant, dated April 24th, 1885, was admissible in evidence to show a license conferred by the city authorizing the construction of the dummy line, if not to show the understanding of the parties as to what was a proper state of repair in which the track had to be kept.   The rule is, that when a railroad company lays its track along a public street, it impliedly assumes the duty of keeping the part of the street so occupied in a reasonable state of repair for the safe passage of travellers over it.   This implies the duty of keeping the track properly surfaced and ballasted, free from dangerous defects, and conformed to the grade of the street. And for a violation of these duties the defendant would be liable to travellers for injuries sustained in consequence. 1 Shearman & Redfield on Negligence, § 357.   This is not a liability on the contract made with the city, but a liability for a tort, committed under the license of the contract, which has resulted in injury to another.

6.  The action of the court was obviously unobjectionable in permitting the complaint to be amended, so as to more fully describe the nature of the negligence imputed to the defendant, as a failure to keep the road-bed of the railway in reasonably safe condition at the point of the accident.

7.  The third count also added no new or independent cause of action.   The introduction of the city ordinance in this count was only the statement of a new logical premise, from which the conclusion of negligence would follow in failing to keep the track in a proper condition of repair for the free passage of vehicles.   The failure to comply with a regulation imposed by a city ordinance on a railroad, and not shown to be unreasonable, is generally held to be *per se* culpable negligence.—*South & North Ala. R. R. Co. v. Donovan*, 84 Ala. 141.   The third count, in other words, only stated a new reason for the fact of negligence previously alleged in the other counts.

We have particularly noticed as many of the assignments

[O'Connor v. McHugh.]

of error as seem to us to be plausible. The others have been examined with proper care, and are deemed not to be well founded.

We discover no error in the rulings of the court, either on the evidence or the law, and the judgment must be affirmed.