ELLA M. MAVITY, APPELLEE, v. GEORGE W. STOVER ET UX., APPELLANTS.

FILED APRIL 22, 1903. No. 12,692.

1. **Forged Deed:** EVIDENCE. Evidence examined, and found sufficient to sustain the conclusions of the trial court that the deed in question was a forgery.

2. **Wrongful Possession of Land.** A surety who pays a debt and wrongfully takes possession of the principal debtor's land can not require, as a condition precedent to yielding possession to the principal's heir, that the latter should reimburse him for such payment.

3. **Action for Rents and Profits:** SUBROGATION: CREDITS. One who pays a mortgage covering land in which he has no legal interest, and who is in no way liable for the mortgage, is not entitled to

be subrogated to the rights of the mortgagee; but if the former is in possession he may be allowed a credit for such payments as against an action by the mortgagor for an accounting for rents and profits.

APPEAL from the district court for Phelps county: ED L. ADAMS, DISTRICT JUDGE. *Decree modified.*

*W. P. Hall, Hector M. Sinclair* and *S. A. Dravo,* for appellants.

*G. Norberg* and *A. J. Shafer, contra.*

LOBINGIER, C.

Appellee sued appellant in the district court for Phelps county, alleging that she was the owner by inheritance of a certain tract of land situated in said county; that appellant had placed on record a deed purporting to convey said premises from appellee to himself; that appellee had never knowingly executed or delivered such deed, and that appellant had been for some time collecting the rents and profits of the property. Appellee prayed:

"That said deed may be declared fraudulent and void; that the same may be vacated and set aside, and that the title to said property may be declared and quieted in this plaintiff as the sole and only heir of the said Molly Stover, deceased; that an accounting may be had of the rents and profits received from said premises by the said George W. Stover since the death of the said Molly Stover, deceased, and that the said George W. Stover may be decreed to pay said amount so found due to this plaintiff, and that a writ of possession may issue placing this plaintiff in possession of said property, and that the costs of this action may be taxed against the defendant, George W. Stover, and for such other and further relief as justice and equity may demand."

Appellant answered denying generally the averments of the petition; alleging that the deed in question had been executed and delivered voluntarily by appellee; that ap-

pellant had paid off certain indebtedness against said land and erected valuable, improvements thereon. The answer also set up other matters which will be more fully noticed hereafter. The court found generally for appellee, and specifically that the deed was never executed or delivered by her, and that she received no consideration therefor. A decree was accordingly entered declaring the instrument void, quieting title in appellant, awarding her possession, and directing further: ,

"As to the prayer for the accounting for the rents and profits received from said lands and received by the defendant George W. Stover, that the defendant be given thirty days to file an answer to that part of the petition and this cause is hereby continued for the term as to the said accounting for the rents and profits so received, to the next term of this court."

The undisputed evidence discloses that at the time of the execution of the deed in controversy, appellee, who was then a little past nineteen years of age, was attending school at Oberlin, Ohio, where she had been sent by relatives after the death of her mother, who had been married to appellant; that the latter came to, Oberlin unannounced and that at his request, appellee accompanied him to a certain office building in the town. Here the testimony diverges, appellant claiming that appellee there executed and acknowledged the deed in question, which he had previously filled out in his own handwriting, while appellee testifies that she never executed or acknowledged any such instrument; that no one else was present in the office to which they went together, but that appellee stepped into an adjoining room, leaving her alone for a time; and that when he returned he stated that he did not need her further, having previously said that he might wish to have her identify him in a transaction connected with some papers. She also testifies that her name, which is appended to the deed, is not only not in her handwriting, but is wrongly spelled.

These were the only witnesses called as to the alleged

execution of the deed. Their statements are utterly irreconcilable and there are reasons, peculiarly strong, why we should not disturb the finding of the trial court. The demeanor of appellant while on the stand may have been such as to render his testimony unworthy of credence, while that of appellee may have carried conviction. Then there are other circumstances which may have influenced the trial court. It may have considered the fact that one of the parties to this alleged transaction was a mature man, whom the record shows to have had more than ordinary experience in business affairs, while the other was a young school girl, not out of her teens, who was at the time hundreds of miles away from relatives and trustworthy advisers. It may have taken into account, as affecting his credibility, the admitted fact that appellant went under an assumed name before coming to this state. Moreover, though the alleged deed bears the names of two witnesses, neither of these were called, nor were their depositions taken; nor does the record contain any explanation as to why this was not done. Then, although a specimen of appellee's handwriting was taken as if to impeach her denial of the genuineness of the signature, this was not introduced in evidence. We must accept the finding of the trial court that the instrument was a forgery.

But it is urged that even if we uphold appellee on this point, we should require her, as a condition precedent to the relief obtained, to reimburse appellant for moneys expended in discharging certain indebtedness against the land, and that this case requires the application of the maxim, "He who seeks equity must do equity." But the facts on this point are likewise disputed, though the conflict is not so pronounced as upon that just reviewed. Appellant testifies that appellee's mother, who was at the time appellant's wife, borrowed the purchase price of the land in controversy from a Mrs. Walser, who was married to appellant shortly after the death of appellee's mother. It is claimed that the amount originally borrowed was $2,000, of which $450 were afterward returned as unin-

vested; that the debt was evidenced by a note executed by appellant and his wife, the former signing as surety; and that the debt was paid by appellant. This is substantially the testimony of appellant, and in this he is corroborated by the depositions of Mrs. Stover, formerly Mrs. Walser, and her sister. At the time of the hearing below, Mrs. Stover had been divorced from appellant, who went to Oregon to supervise the taking of the depositions of Mrs. Stover and her sister, at which there was no appearance on behalf of appellee. On the other hand, there were some circumstances which might have justified the trial judge in rejecting the claim. Aside from the want of credibility which he must have ascribed to appellant, as evidenced by his finding on the point first above reviewed, the court might have taken into account the fact that there was no written evidence whatever of this alleged transaction. Though the loan was said to have been of a considerable size, no mortgage was taken, and the note was claimed to have been destroyed, and neither party, apparently, kept any record or receipts of payments. Appellant's own statement with reference to this phase of the matter is as follows:

"The fact is—the transaction between Mrs. Stover, my wife—when I had any money and she wanted any money I paid it to her on that claim, and I didn't keep any record of that as I would if it was a stranger."

His other testimony as to how he paid this debt to his wife is equally indefinite. After testifying that he deeded her seven acres of land, which he afterward bought back, his examination proceeded as follows:

Q. How much did you actually pay, though?

A. I don't know what I paid her.

Q. How much cash did you pay her?

A. I paid her the difference between that land and the money borrowed.

Q. How much was it?

A. I would have to look at the records.

None of the parties who testified as to this alleged loan

give any specific instance of payment after the alleged deed was placed on record, except one item of $75, which appears to have been paid about the time appellant and his last wife were arranging the details of their separation and settling the award of alimony. Again, Mrs. Stover's former husband, from whom she had been divorced previous to her marriage with appellant, testifies that when they separated in January, 1883, he gave her $500 in cash and $6,500 in notes, payable at different times, and that she had no other means whatever. As this was the year in which the alleged loan was made, the court might have believed from this evidence that Mrs. Walser could not possibly have made the loan of $2,000. It is true that appellant testifies in rebuttal that a subsequent settlement was made between Walser and his wife, by which the latter accepted fifty cents on the dollar in the summer of 1883, but he also says that he, as assignee, sued Walser on the first $1,000 note, which, according to Walser's testimony, was not due until July, 1884, and not sued on until 1886, which would seem to discredit the theory of a general cash settlement in 1883.

But even if we were permitted to disregard all this contrary showing, and accept appellant's claim that appellee's mother borrowed from Mrs. Walser the money which paid for the land in controversy, and that appellant repaid it, we do not think that the case permits of an application of the doctrine for which he contends. His real claim here is that he, as a surety, should be subrogated to the creditor's rights against the land, because he has paid the debt. The authorities he cites on this point are cases where the debt was secured by a mortgage or some similar security. According to the testimony, the creditor had no rights against the land. It is admitted that no mortgage was given, and that the claim was evidenced by a mere note. By paying such a debt appellant would, at most, be subrogated to the creditor's rights in the note, and his remedy would have been to present it as a claim against the debtor's estate. *Robinson v. Leavitt,* 7 N. H. 73, and other

authorities cited by appellant, have no application to such a case.

Appellant, however, testifies that the land in controversy was subject to a mortgage for $400 to a loan company, and that he paid this off. This testimony was clearly incompetent, as the mortgage, or, in its absence, the record, would have been the best evidence of such an incumbrance, and the court might have been justified in declining to consider this. But even had the incumbrance been properly proved, we do not see that it affords any basis for applying the doctrine of subrogation. There is no claim that appellant was liable on this mortgage, but, on the contrary, the answer alleges that "the payment of that was assumed by the said Molly Stover as a part consideration of the purchase price." The benefits of subrogation can not be invoked by one who pays under such circumstances. 24 Am. & Eng. Ency. of Law (1st ed.), 281.

"A mere stranger or volunteer can not, by paying a debt for which another is bound, be subrogated to the creditor's rights in respect to the security given by the real debtor. *Hough v. Ætna Life Ins. Co.*, 57 Ill. 318; *Young v. Morgan*, 89 Ill. 199, 203; *Beaver v. Slanker*, 94 Ill. 175. A stranger within the meaning of this rule is not necessarily one who has had nothing to do with the transaction out of which the debt grew. Any one being under no legal obligation or liability to pay the debt is a stranger, and if he pays the debt, a mere volunteer." *Suppiger v. Garrels*, 20 Ill. App. 625, 629.

But it is claimed that appellant had an interest in the land as tenant by curtesy, "and as such had the right to pay off the mortgage to protect his own estate." Appellee's mother died in 1883, and our statute relating to curtesy then in force contained the following proviso:

"That if the wife, at her death, shall have issue by any former husband, to whom the estate might descend, such issue shall take the same, discharged from the right of the surviving husband to hold the same as tenant by the curtesy." Compiled Statutes (1883), ch. 23, sec. 29.

By virtue of this statute, appellee's rights vested immediately on her mother's death, and appellant acquired no estate of curtesy.

For the same reason the court was justified in awarding possession to appellee. Whether appellant might not have been entitled to demand a jury trial as to his right of possession, we need not now determine as no such demand was made. *Davis v. Snyder,* 45 Neb. 415; *Lounsbury v. Catron,* 8 Neb. 469, 477.

But while this does not seem to be a case in which we can apply the doctrine of subrogation, we nevertheless think that if appellant has actually paid a mortgage on the land, and can show this by competent evidence, he should be permitted to offset the amount of such payment against any claim for rents and profits. We think it would be inequitable to charge him for the latter, and deny him any credit for expenditures which he may have made, thereby preventing a sale of the land under the mortgage, and its loss to appellee. He would also, of course, be entitled to a similar credit for improvements which he may have placed on the land.

We therefore recommend that the decree be so modified that in the subsequent accounting therein provided for, he may be entitled to credit for any payments he may have made on the mortgage, with interest and for any improvements placed on the land, but that in all other respects the decree be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is modified so as to provide that appellant shall be entitled, in the subsequent accounting, to a credit for any payments he may have made to discharge any mortgage covering the land, with interest, and also for improvements placed thereon.

DECREE MODIFIED.