THE HON. HENRY L. MYERS,
THE HON. ALBERT P. STARK,
THE HON. JOHN A. MATTHEWS, } Associate Justices.
THE HON. ALBERT J. GALEN,

ISOM, APPELLANT, v. LARSON, RESPONDENT.

(No. 6,033.)

(Submitted February 15, 1927. Decided March 2, 1927.)

[255 Pac. 1049.]

*Real Property—Quieting Title—Deeds—Mortgages—Recordation — Time — Judgment Liens — Priorities — Husband and Wife—Tenants in Common—Attachment and Execution—Homesteads—Subrogation.*

Real Property—Husband and Wife—When Tenants in Common.
    1. Where, in an action to quiet title, husband and wife were agreed to have been "the owners" at the time they executed a deed, they were, under section 6683, Revised Codes of 1921, tenants in common, each owning an undivided one-half interest therein.

Same—Deeds—When Deed Absolute a Mortgage.
    2. A deed, absolute on its face, but given as security for a debt, is in fact a mortgage.

---

2. Deed absolute as mortgage, see notes in 4 Am. St. Rep. 707; 9 Am. St. Rep. 192; 18 Am. St. Rep. 802; 31 Am. St. Rep. 265; L. R. A. 1916B, 573. See, also, 19 R. C. L. 261.

Same—Mortgages—Equity of Redemption a Property Right Which may
be Sold or Seized on Attachment or Execution.

3.　The equity of redemption, as distinguished from the right of
redemption, existing from the time of the execution of a mort-
gage up to the time of sale on foreclosure, is a substantive prop-
erty right which may be sold or seized on attachment or execution,
the rule applying as well to a deed absolute on its face but sub-
ject to a defeasance agreement, as in case of a mortgage.

Same—Homestead Declaration by Husband Alone—Execution—Wife's
Interest not Exempt.

4.　Where a wife does not join in a homestead declaration on
property owned by them as tenants in common, the exemption
from attachment or execution does not attach to her interest.

Same—Judgment Liens Do not Attach Where Debtor's Title Undis-
closed of Record.

5.　While the judgment lien provided for by section 9410, Revised
Codes of 1921, attaches to property held by a tenant in common,
it does not attach while the debtor's title is undisclosed of record.

Same — Deeds — Recordation — Time — Judgment Liens—Priority Over
Mortgage Lien.

6.　A grantee of property under a deed absolute on its face but
in fact a mortgage reconveyed the property by deed to the grantors
(husband and wife) upon payment of the debt secured thereby,
and presented it for record five minutes before a second grantee
of the same grantors presented his, also given as security for a
loan. Prior thereto a creditor of the wife had attached her in-
terest in the premises and secured judgment which had been duly
docketed. *Held,* that immediately upon the filing for record of the
first deed, the grantors were reinvested with the legal title and
the judgment lien of the creditor at once attached to the interest
of the wife therein, and was therefore prior and superior to the
claim of the second grantee under decree of foreclosure of his
mortgage deed.

Subrogation—When Doctrine Inapplicable.

7.　Where one voluntarily loans money to pay off a mortgage
debt, he taking a mortgage on the property, and on foreclosure
thereof discovers a prior lien thereon, he will not be heard to
say that he is entitled to be subrogated to the position held by
the former mortgagee; not having had any interest in the prem-
ises to protect and not having been under obligation to pay the
debt, the doctrine of subrogation cannot be applied in aid of his
security.

[1]　Husband and Wife, 30 C. J., sec. 86, p. 557, n. 55 New.

[2].　Mortgages, 41 C. J., sec. 64, p. 310, n. 64.

[3]　Attachment, 6 C. J., sec. 368, p. 203, n. 49. Executions, 23
C. J., sec. 91, p. 348, n. 94; p. 349, n. 96. Mortgages, 41 C. J., sec.
137, p. 366, n. 62.

[4]　Homesteads, 29 C. J., sec. 71, p. 814, n. 8 New.

[5]　Judgments, 34 C. J., sec. 915, p. 598, n. 27, 31 New.

[6].　Judgments, 34 C. J., sec. 893, p. 585, n. 90. Mortgages, 41
C. J., sec. 141, p. 367, n. 81 New; sec. 492, p. 547, n. 96; 27 Cyc.,
p. 1724, n. 63.

[7]　Subrogation, 37 Cyc., p. 471, n. 87.

3.　See 19 R. C. L. 501.

7.　See 25 R. C. L. 1337.

*Appeal from Park County, in the Sixth Judicial District; Henry G. Rodgers, a Judge of the Fifth District, presiding.*

ACTION by Francis M. Isom against Swan Larson. Judgment for defendant; plaintiff appeals. Judgment affirmed.

*Messrs. Burnett & Vetleson,* for Appellant, submitted a brief; *Mr. Martin Vetleson* argued the cause orally.

*Messrs. Gibson & Smith,* for Respondent, submitted a brief; *Mr. Vard Smith* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment in favor of defendant. Plaintiff commenced action to quiet title to certain residence property in Livingston. By answer the defendant alleged that he was the holder of a lien superior to plaintiff's title, and prayed that his lien be foreclosed and the property sold in satisfaction thereof. A reply was filed and, issue being joined, the cause was submitted to the trial court on an agreed statement of facts.

The material facts, appearing from the statement and exhibits attached thereto, are as follows: On January 22, 1916, J. A. Carson and Mrs. J. A. Carson were husband and wife and were "the owners of" three lots in Livingston, each having a frontage of twenty-five feet, with a dwelling-house erected thereon in such manner that the property was indivisible, which property at all times mentioned had a value of $4,200. On the above date the Carsons jointly executed and delivered to Josephine E. Koehler a warranty deed to the premises as security for a loan then made to them. This deed was duly recorded. On May 18, 1920, Josephine E. Koehler deeded the premises to the Carsons jointly, but this deed was evidently placed in escrow to abide the payment of the amount due the grantor from the

Carsons, though the agreed statement is silent on the subject.

In December, 1920, Larson commenced an action against the Carsons and secured the issuance and levy of a writ of attachment against the premises, and thereafter, on November 30, 1921, J. A. Carson filed a declaration of homestead thereon. Thereafter Larson recovered judgment in his attachment suit against Mrs. J. A. Carson only, which judgment was duly docketed in Park county on March 6, 1922. On March 9, 1922, there was due Koehler from the Carsons $2,800; this amount was then loaned to them by Isom and was used in satisfaction of the debt. Isom had no interest in the premises or in the debt, and his loan was purely voluntary. Thereupon the Carsons jointly deeded the premises to Isom as security for the repayment of the loan, and the three entered into a written contract for the reconveyance thereof on payment of the loan.

On March 13, 1922, the deed from Koehler to the Carsons and the deed from the Carsons to the plaintiff were delivered to the county clerk for record and were indorsed as ''received for record,'' the first at 1:40 P. M. and the second at 1:45 P. M.

The Carsons failed to repay the Isom loan when due, and Isom thereupon instituted foreclosure proceedings, resulting in a decree of foreclosure and order of sale of date February 20, 1924, and, as the purchaser at the foreclosure sale, plaintiff received a sheriff's deed to the premises on March 26, 1925, which was duly recorded. On July 9, 1925, defendant caused a writ of execution to be issued and levied upon all of the right, title and interest which Mrs. J. A. Carson had in the premises on December 18, 1920, or which she thereafter acquired. This action resulted. The court adopted the agreed statement as its findings and rendered judgment for the defendant in accordance with his prayer for relief.

The position taken by counsel for plaintiff on appeal from the judgment is that the record title controls; that as the premises stood of record in the name of Josephine E. Koehler at all times up to the time plaintiff acquired such title, with the exception of five minutes on March 13, 1922, which was but a transitory seizin insufficient to confer a lien, the Carsons had no attachable interest in the premises, and further that "Mrs. Carson never had any title, legal, equitable or of record, to which the attachment of the appellant could or did affix itself," and that defendant was in no position to reach any "secret interest" which Mrs. Carson may have had in the premises. The following legal principles will effectually dispose of these contentions:

[1] 1. As it was agreed that J. A. Carson and Mrs. J. A. Carson were "the owners" of the premises at the time they executed the Koehler deed, they were tenants in common, each owning an undivided one-half interest therein. (Secs. 6682, 6683, Rev. Codes 1921; *Rodda* v. *Best,* 68 Mont. 205, 217 Pac. 669.)

[2] 2. The deed from these owners to Koehler, while absolute on its face, was in fact a mortgage subject to defeasance on payment of the mortgage debt. (Secs. 8249, Rev. Codes 1921; *Elling* v. *Fine,* 53 Mont. 481, Ann. Cas. 1918C, 752, 164 Pac. 891; *Nolan* v. *Benninghoff,* 64 Mont. 68, 208 Pac. 905.)

[3] 3. The *equity* of redemption, as distinguished from the right of redemption, existing from the time of the execution of a mortgage up to the time of sale on foreclosure, is a substantive property right which may be sold or seized on attachment or execution (*Banking Corporation of Montana* v. *Hein,* 52 Mont. 238, 156 Pac. 1085), and where a deed, absolute on its face, is known to be subject to a defeasance agreement, the property right of the grantor therein is subject to attachment and to levy and sale on execution in the same manner as it is when a mortgage is given as security for the mortgage debt. (*Clinton Na-*

*tional Bank* v. *Manvaring,* 39 Iowa, 281; *Moors* v. *Albro,* 129 Mass. 9; *Grossenheimer* v. *Moulton,* 89 Ala. 521, 2 South. 652.)

4. The method of attaching real property standing of record in the name of another is prescribed in subdivision 2 of section 9262, Revised Codes of 1921, and this method was followed by the defendant in levying his attachment.

5. While the homestead selection made by J. A. Carson [4] protected his one-half interest in the property from execution and forced sale (sec. 6948, Rev. Codes 1921), Mrs. Carson's interest was her separate property (sec. 5792) and, as she did not join in the declaration, the homestead exemption did not attach to her interest (sec. 6947).

6. Section 9410, Revised Codes of 1921, provides that on docketing a judgment it becomes a lien upon all real property of the judgment debtor, not exempt from execution, which he then owns or which he may thereafter acquire. Such a lien attaches to property held as a tenant in com-[5] mon (34 C. J. 598), but does not attach while the debtor's title is undisclosed of record. (*McMillan* v. *Davenport,* 44 Mont. 23, Ann. Cas. 1912D, 984, 118 Pac. 756.)

7. The premises, however, stood of record in the name of [6] the Carsons for a period of five minutes on March 13, 1922, just prior to the recording of the Isom mortgage deed, and, as the Carsons were at all times the real owners of the premises, this was not that "transitory seizin" which plaintiff contends will not subject the property to a prior lien, citing *J. I. Case T. M. Co.* v. *Walton,* 39 Okl. 748, 136 Pac. 769, but was a *bona fide* seizin reinvesting the legal title in the owners of the premises and at the same time releasing the lien of the Koehler mortgage deed.

8. As the deed from the Carsons to Koehler was in fact a mortgage, the deed from Koehler to the Carsons was, in effect, no more than a satisfaction of the mortgage, and immediately upon the discharge of the Koehler lien and the recordation of title in the Carsons defendant's judg-

ment lien attached and obtained priority over plaintiff's mortgage lien subsequently recorded. (Sec. 8235, Rev. Codes 1921.)

9. As a foreclosure purchaser, the plaintiff took his title subject to all valid existing and unsatisfied liens against the premises at the time his mortgage deed became a lien thereon. (29 Cyc. 1724, and cases cited.)

10. The plaintiff contends that, as he furnished the [7] money for the payment of the Koehler debt, he is entitled to be subrogated to the position held by Koehler; but his mortgage security did not fail and he relied solely upon it in his foreclosure proceeding. He did not deal with Koehler, but voluntarily loaned the money to the Carsons without any agreement that he should be subrogated to the Koehler rights; he had no interest in the premises to protect and was under no obligation to pay the debt. Under these circumstances the equitable doctrine of subrogation cannot be applied in aid of his security. "To do so would encourage carelessness in taking such security." (*Fort Dodge B. & I. Assn.* v. *Scott,* 86 Iowa, 431, 53 N. W. 283; *Aetna Life Ins. Co.* v. *Town of Middleport,* 124 U. S. 534, 31 L. Ed. 537, 8 Sup. Ct. Rep. 625; *Suppiger* v. *Garrels,* 20 Ill. App. 620; *Mavity* v. *Stover,* 68 Neb. 602, 94 N. W. 834; *Brown* v. *Rouse,* 125 Cal. 645, 58 Pac. 267.)

It is therefore apparent that the defendant's judgment lien attached prior to that of plaintiff; the latter took title to the premises subject to the judgment lien and could only evade the foreclosure of such lien or the sale of the premises on execution of the judgment, by payment of the judgment.

For the reasons stated the judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Myers, Stark and Galen concur.

Rehearing denied March 31, 1927.